**Affirm and Opinion Filed December 12, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-00277-CV

**PEDRO GONZALEZ & MARIA GOMEZ, Appellants**
**V.**
**VATR CONSTRUCTION LLC & ALL AMERICAN ROOFING & CONSTRUCTION,**
**Appellees**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-09-09360-M**

## OPINION

Before Justices FitzGerald, Lang-Miers, and Myers
Opinion by Justice FitzGerald

This case arises from a construction accident in which a roofer suffered fatal injuries after he failed to use safety equipment. Appellants Pedro Gonzalez and Maria Gomez (together, the "Estate") sued the general contractor, VATR Construction, LLC ("VC") and one of the subcontractors, All American Roofing & Construction ("All American") for, *inter alia*, negligence, gross negligence, and negligence per se. The trial court granted summary judgment in favor of VC and All American. On appeal, the Estate contends the trial court erred in granting summary judgment and in failing to sustain its objections to the summary judgment evidence. Concluding appellants' arguments are without merit, we affirm the trial court's judgment.

# I. BACKGROUND

The construction project at issue here involved work at an apartment complex, the Villages at Turtle Rock (the "Villages"). VC was the general contractor on the project and subcontracted the roofing work to All American. This relationship was memorialized in a Subcontract Agreement.[1] All American then entered into a Subcontract Agreement for the roofing repair work with Patricio Ceniceros, who in turn subcontracted the work to Gustavio Salazar. Salazar further subcontracted the work out to a group of men that included the deceased, Roger Alexis Gonzalez ("Gonzalez"). Each of the men was required to sign an agreement with Salazar in which he affirmed responsibility for his own safety. Gonzalez failed to utilize fall protection equipment and sustained fatal injuries when he fell from the top of a building while working on the roof.

The Estate initiated this lawsuit against VC and All American and asserted claims for negligence, gross negligence, negligence per se, and negligent hiring. VC and All American filed traditional and no-evidence motions for summary judgment, arguing *inter alia*, that they owed no duty to Gonzalez. The Estate responded to the motions for summary judgment and filed a document entitled "Objections and Special Exceptions to Defendant [VC's] Motion for Summary Judgment." The day before the summary judgment hearing, the Estate filed a document entitled "Plaintiffs' Additional Objections and Special Exceptions." There is no indication that the trial court ever ruled on the any of the Estate's objections or special exceptions. The trial court granted summary judgment in favor of VC and All American and ordered that the Estate take nothing, but did not specify the basis for its ruling. This appeal followed.

---

[1] As a result of weather-related damage to various roofs, VC and All American entered into a second subcontract agreement for storm repair. At the time of the incident, work was being performed under both agreements. The subcontract agreements contain identical terms, and for ease of reference are referred to as a single agreement.

## II. STANDARD OF REVIEW

Typically, when a party files a hybrid summary judgment motion on both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of review. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the non-movant failed to produce more than a scintilla of evidence under the no-evidence summary judgment provisions of Rule 166a(i), then there is no need to analyze whether the movant's summary judgment proof satisfied the burden set forth for traditional summary judgment under Rule 166a(c). *See* TEX. R. CIV. P. 166a(c) & (d); *E. Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813, 816 (Tex. App.—Fort Worth 2007, pet. denied).

But here, there is no clear distinction in the summary judgment motions (and, to a certain extent, on appeal) between which aspects of appellees' motions were brought on traditional summary judgment grounds and which were brought on no-evidence grounds. Both traditional and no-evidence summary judgment claims can be raised in a single motion so long as the motion sufficiently segregates the traditional claims from the no-evidence claims. *Torres v. City of Waco*, 51 S.W.3d 814, 822 n.7 (Tex. App.—Waco 2001, no pet.). If a motion does not sufficiently segregate the claims, we review the motion under a traditional standard of review. *Gross v. Methodist Hosps. of Dallas,* No. 05-00-02124-CV, 2002 WL 1380399 at *2 (Tex. App.—Dallas June 27, 2002, no pet.) (not designated for publication). Therefore, we review the trial court's grant of summary judgment under the standard of review for traditional motions.

The standard of review for traditional summary judgment under TEX. R. CIV. P. 166a(c) is well established. *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d

842, 846 (Tex. 2005); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Id.* A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). Once the defendant establishes a right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). We review the grant or denial of a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Tex. Integrated Conveyor Sys. Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365 (Tex. App.—Dallas 2009, pet. denied).

## III.    ANALYSIS

*Objections to Summary Judgment Evidence*

In its first issue, the Estate argues the trial court erred in failed to sustain its objections and special exceptions to the summary judgment evidence.[2]  We cannot determine whether the trial court properly granted summary judgment until we first determine what evidence was before the court. Therefore, we begin with the Estate's first issue.

After VC and All American filed their motions for summary judgment, appellants filed a sixteen page document entitled "Objections and Special Exceptions to Defendant [VC's] Motion for Summary Judgment." The Estate subsequently filed a document entitled "Plaintiffs'

---

[2] When a court does not rule specifically on special exceptions to a motion for summary judgment but does grant the summary judgment motion, the special exceptions are treated as having been effectively overruled. *See Fieldtech Avionics & Instruments, Inc. v. Component Control. Com, Inc.,* 262 S.W.3d 813, 824 (Tex. App.—Fort Worth 2008, no pet.).

–4–

Additional Objections and Special Exceptions." The court did not rule on either the objections or the special exceptions.

It is well-established that "[t]he granting of a summary judgment motion does not necessarily provide an implicit ruling that either sustains or overrules the objections to the summary judgment evidence." *Allen v. Allen*, 97 S.W.3d 655, 663 (Tex. App.—Waco 2002, no pet.). Objections to the form of summary judgment evidence are preserved for appellate review only if those objections are made and ruled on in the trial court. *See Choctow Props., L.L.C. v. Aledo I.S.D.*, 127 S.W.3d 235, 241 (Tex. App.—Waco 2003, no pet.). Substantive objections do not require a written ruling, and the objection may be raised for the first time on appeal. *Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas 2004, no pet.). Therefore, we may consider only those objections challenging the substance of the summary judgment evidence. *See Green v. Indust. Specialty Contractors, Inc.*, 1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *see also Hydroscience Tech., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 793 (Tex. App.—Dallas 2013, pet denied) (stating substantive defects are never waived because the evidence is incompetent and cannot be considered under any circumstances).

Appellants tacitly acknowledge the above principles in arguing "appellants request that this Court of Appeals find that the following objections and special exceptions clearly address defects of substance . . . ." What follows, however, are eight pages of vague assertions concerning the allegedly substantive objections. Appellants do not clearly identify the specific objections, the objectionable material, or why the objections are purportedly substantive. Appellants also fail to distinguish between those items intended to be objections and those intended to be special exceptions.

Rule 38.1 of the Texas Rules of Appellate Procedure sets forth what must be included in an appellant's brief. *See* TEX. R. APP. P. 38.1. Rule 38.1(i) requires that a brief "contain a clear

and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). The appellate court has no duty to brief issues for an appellant. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). The failure to provide appropriate record citations or a substantive analysis waives an appellate issue. *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 460 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (holding that failure to offer argument, citations to record, or citations to authority waives issue on appeal); *Devine v. Dallas Cnty.*, 130 S.W.3d 512, 513–14 (Tex. App.—Dallas 2004, no pet.) (holding that when a party fails to adequately brief a complaint, he waives the issue on appeal); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex.1994) (holding appellate court has discretion to deem points of error waived due to inadequate briefing).

Stated otherwise, an appellant must provide such a discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Id* . Appellate courts must construe briefing requirements reasonably and liberally, but a party asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law support his contention. *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Because appellants fail to provide "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record," their first issue has not been preserved for our review and is overruled. *See* TEX. R. APP. P. 38.1(i). We therefore consider all of VC's and All American's summary judgment evidence in determining whether the trial court erred in granting summary judgment.

*Did VC and All American Owe a Duty to Gonzalez?*

In its First Amended Petition, the live pleading at the time the motions for summary judgment were filed, the Estate asserted that VC and All American engaged in "general negligence, negligence per se, gross negligence, and malice."[3] VC and All American argued that they were entitled to summary judgment because they did not owe a duty to Gonzalez. With regard to the Estate's claims sounding in negligence, our threshold inquiry turns on the existence of a duty. *See Thapa v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999). In the absence of a duty, there can be no negligence liability. *Id*. Whether VC and All American owed a duty to Gonzalez is a question of law. *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).

Whether VC and All American owed Gonzalez a duty of care is governed by the law concerning a general contractor's duties to a subcontractor's employees. *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002). Generally, a premises owner or occupier of land does not owe any duty to ensure that an independent contractor performs his work in a safe manner. *Koc Ref. Co v. Chapa*, 11 S.W.3d 153,155 n.1 (Tex. 1999) (per curium); *Abarca v. Scott Morgan Residential, Inc.*, 305 S.W.3d 110, 126 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985)). Further, a general contractor owes the same duty as a premises owner to an independent contractor's employee. *Koch,* 11 S.W.3d at 155 n.1; *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997). However, a limited duty arises if a premises owner or general contractor retains control over a subcontractor's methods of work or operative details to the point that the subcontractor is not entirely free to do the work in his own way. *Koch,* 11 S.W.3d at 154. The premises owner or

---

[3] VC and All American also construed the pleadings to include claims for negligent hiring and joint enterprise theories of liability, and moved for summary judgment accordingly. Appellants do not challenge the trial court's grant of summary judgment on any of these claims on appeal.

general contractor's "duty of reasonable care is commensurate with the control it retains" over the subcontractor. *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354, 355 (Tex. 1998) (per curiam). The more detailed the general contractor's control over the independent contractor's work, the greater is the general contractor's responsibility for any injuries that result. *Hoechst–Celanese*, 967 S.W.2d at 356. General supervisory control that does not relate to the activity causing the injury is not sufficient to create a duty. *Abarca*, 305 S.W.3d at 126. Thus, merely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to subject a premises owner to liability. *Koch*, 11 S.W.3d at 155. Further, there must be a nexus between a general contractor's retained supervisory control and the condition or activity that caused the injury. *Dow*, 89 S.W.3d at 606, 607; *Hoechst–Celanese*, 967 S.W.2d at 357.

"Control can be established in two ways: by (1) a contractual right of control or (2) an exercise of actual control." *Abarca,* 305 S.W.3d at 122 (citing *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)). If a written contract assigns the right of control to the employer, then the plaintiff need not prove an actual exercise of control to establish a duty. *See Dow*, 89 S.W.3d at 606. Conversely, if the contract does not explicitly assign control over the manner of work to the employer, then the plaintiff must present evidence of the actual exercise of control by the employer. *Id.*

First we consider whether All American owed a duty to Gonzalez. There was no contract between All American and Gonzalez. VC, the general contractor, subcontracted the roofing work to All American. All American then subcontracted the roofing repair work to Ceniceros, who in turn subcontracted the work to Salazar. Salazar then subcontracted the work to a group of men who included Gonzalez.

Pursuant to the subcontract agreement with Ceniceros, All American expressly disclaimed any responsibility for supervision and work performance. To this end, the subcontract states:

> **Independent Subcontractor.**
>
> The subcontractor and the subcontractor's employees are not employees of the contractor and the contractor shall have **no responsibility** for supervising the employees of the subcontractor. The subcontractor is an independent contractor and assumes all responsibilities of an employer for the performance of work.

(Emphasis added). Thus, the contract reflects that All American did not have the right to control the means, methods, or details of any of the subcontractor's work. *See Dow*, 89 S.W.3d at 606.

In addition, Ceniceros testified in his deposition that he was in charge of either supervising and controlling the labor or passing that responsibility down to another subcontractor. The summary judgment evidence also includes the affidavit of Thomas H. Scott, an OSHA trained certified safety professional. Scott stated that All American passed the responsibility of monitoring, controlling, directing, and supervising the daily work to Ceniceros.

The record reflects that Ceniceros subcontracted the work to Salazar. Salazar subcontracted the work to a group of men that included Gonzalez and a man named Hernandez. In his deposition, Salazar described his written subcontract with Hernandez. The contract stated that the subcontractor was not Salazar's employee and assumed all responsibility for his own safety. The contract further stated that Salazar was not responsible for supervising Hernandez's work. Salazar testified that he had a similar contract with Gonzalez.

Nonetheless, the Estate argues that a duty arose by contract. According to the Estate, the contract between All American and VC required All American to "retain control over safety precautions" in connection with the roofing work. The Estate also appears to argue that the "General Conditions" section of the contract imposed an obligation on All American to control

–9–

the work. Nether argument is supported by a reference or citation to or a quotation of the contractual language upon which this argument is premised.

The Estate's reliance upon contractual provisions in contracts to which Gonzalez is not a party or third-party beneficiary is misplaced. Gonzalez cannot rely on upstream contracts to establish the existence of a duty. *See, e.g.*, *Wood v. Phonoscope, Ltd.*, No. 01-00-01054-CV, 2004 WL 1172900, at *10 (Tex. App.—Houston [1st Dist.] May 27, 2004, no pet.) (mem. op) (rejecting injured worker's attempt to rely on third-party contract between general contractor and the party who hired general contractor to establish duty).

*Andrews v. DT Construction, Inc.*, 205 S.W.3d 4, 10 (Tex. App.—Eastland 2006, no pet.) further informs our analysis. In *Andrews*, the employee of a subcontractor brought an action against the general contractor for injuries the employee sustained on a scaffold. The contract between the general contractor and the party who hired the general contractor required the general contractor to take reasonable precautions for the safety of workers. The subcontract also required the subcontractor to take similar precautions. The employee argued that he was a beneficiary of the general contract and the general contract required the general contractor to make the workplace safe for him. In rejecting this argument, the court noted that the general contractor contracted with the subcontractors to be responsible for the manner and means of accomplishing the work. *Id.* at 13. The court also noted that requiring the subcontractor to observe and promote compliance with general safety guidelines and other safety precautions "did not impose an unqualified duty of care on [the general contractor] to insure that the independent contractor's employees did nothing unsafe." *Id.* In conclusion, the court held that "the mere contractual retention of control over safety on a construction site was not sufficient to impose general liability on the general contractor when the independent contractor's employee was injured." *Id.*

This principle applies with equal, if not greater force here. All American is three tiers of subcontractors removed from Gonzalez. All American contracted with Ceniceros to be responsible for the work. This responsibility was then delegated further down the subcontractor chain. Under these circumstances, the evidence conclusively disproved a contractual right of control.

The Estate also relies on the affidavit of its safety expert, Tom Littrell. Litrell opined that All American had the duty to have someone walking around the job site. Littrell further opined that if "there is roofing activity being performed . . . [All American] need[s] to tour the site at least twice a day to see that the necessary safety rules and regulations are complied with." From this testimony, the Estate urges that All American had a duty to supervise Gonzalez while he was working. We disagree.

The expert's opinion concerning what All American should have done presupposes that there was a duty. It does not raise a fact issue as to what the contract actually required. The question of duty is a matter of law. *See Nabors Drilling*, 288 S.W.3d at 404. "An expert witness may not testify to his opinion on a pure question of law." *Ledbetter v. Missouri Pacific R. Co.*, 12 S.W.3d 139, 144 (Tex. App. —Tyler 1999, pet. denied).

Having concluded that there was no contractual duty, we next consider whether All American owed a duty to Gonzalez by virtue of having exercised an actual right of control. The summary judgment evidence reflects that two employees, Tony Blex and Acasio Duran visited the job site before the accident. Both were on the site the day the project started. Blex was there before the work actually began, and Duran had no knowledge of whether work commenced because he remained in his truck. Neither Blex nor Duran returned to the job site until after the incident.

There is no evidence that any All American employees were at the job site when any work was performed, or that they were involved in any supervision or control of the work in any way. Ceniceros' deposition testimony establishes that the manner and means of how the roof was installed and the safety of the workers were his responsibility. He further stated that when All American hires him as an independent contractor, nobody from All American supervises or controls the work.

Salazar, the individual who hired Gonzalez, testified similarly. Salazar stated that no one from All American was controlling the work performance for roof repairs. Salazar also stated that Ceniceros supplied the equipment and materials for the work, and then performance was left to Salazar.

In response, the Estate offered no evidence to raise a fact issue as to whether All American actually exercised control over the job site. In the absence of such evidence, the trial court properly concluded that All American did not exercise actual control.

Next, we consider whether VC owed a duty to Gonzalez, again examining whether a duty arose by contract or through the exercise of actual control. *See Abarca,* 305 S.W.3d at 122. There was no contract between VC and Gonzalez. The Estate relies on the same third-party contracts — the contract between VC and the Villages, and the contract between VC and All American — to argue that VC owed a contractual duty to Gonzalez. We have already rejected the argument that these upstream contracts created a duty owed by All American to Gonzalez, and for the same reasons conclude that there was also no contractual duty owed by VC to Gonzalez.

Moreover, in addition to the absence of a third-party beneficiary relationship between VC and Gonzalez, the subcontract agreement between VC and All American makes clear that VC did not retain any responsibility for the subcontractors' work. To the contrary, responsibility was passed down the chain through each successive subcontract. All American was required to

assume toward VC all the obligations and responsibilities VC assumed toward the Villages. The subcontract further provides that All American's subcontractors assume toward All American all of the obligations and responsibilities that All American assumed toward VC.

The subcontract states that All American assumes full responsibility for "safety precautions in connection with the means, methods, techniques, sequences, supervision and procedures pertaining to the subcontractor's work." In addition, the subcontract provides that All American is responsible for the enforcement of its fall protection plan. Consequently, the express language of the contracts establishes that VC did not retain a contractual right of control over the means, methods, or details of Gonzalez's work. *See Deleon v. DSD Dev., Inc.*, No. 01-03-00806-CV, 2006 WL 2506743, at *7, 8 (Tex. App. — Houston [1st Dist.] Aug. 31, 2006, pet. denied) (mem. op.).

We next examine whether VC actually exercised a right of control. The record reflects that Salazar, Gonzalez's employer, and Ceniceros, All American's subcontractor, were the parties in control of both the work and safety. Ceniceros provided the safety equipment and told the workers to use fall protection and to tie off while working on the roof. Salazar also instructed Gonzalez to wear his safety equipment and to tie off when he was on the roof. The summary judgment evidence also demonstrates that VC did not direct or give instructions to Gonzalez or any other workers. Salazar testified that he did not even know who VC was prior to the accident.

In analyzing whether VC exercised an actual right of control, we are mindful that it is not enough that a contractor may have the right to order the work to stop or inspect progress or receive reports. *See Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.— Houston [14th Dist.] 2007, no pet.). Rather, "the evidence must give rise to an inference that the supervising entity specifically approved the dangerous act." *Abarca*, 305 S.W.3d at 124. The evidence does not support such an inference here. As the *Dow* court observed, "we have never

concluded that a general contractor actually exercised control of a premises where . . . there was no prior knowledge of a dangerous condition and no specific approval of a dangerous act*." Dow,* 89 S.W.3d at 609.

The Estate also contends that VC had a duty to inspect the premises to discover dangerous conditions. In support of this argument, the Estate cites *Barham v. Turner Const. Co.,* 803 S.W.2d 731, 735–36 (Tex. App.—Dallas 1990, writ denied). *Barham* does not stand for the proposition the Estate seeks to advance. Instead, *Barham* provides that a general contractor has a duty of inspection to warn of dangerous conditions on the premises before the subcontractor begins work. *Id*. Here, there are no allegations of a dangerous condition that existed on the job site before the work began. Moreover, the *Burham* court specifically stated that "a general contractor does not have a duty to see that an independent contractor performs his work in a safe manner, and can assume that an independent contractor will take proper care and precautions to assure the safety of his own employees." *Id*.

The Estate also points to the fact that VC hired a safety consultant at the job site, and on three occasions, the consultant observed some of the roofers not utilizing fall protection.[4] Then, the Estate cites to evidence that the officer investigating the incident observed the workers on the roof wearing harnesses with no ropes or cable to attach the harnesses. Based on this evidence, the Estate concludes that "[VC] and All American each breached its duty to inspect the premises before and while . . . Gonzalez was working on the roof, and to maintain the use of safety precautions on that roof, to provide 'the proper safety equipment' . . . and to enforce 'its fall protection plan' on that roof." These conclusions do not follow from the evidence cited or adduced. First, hiring a safety consultant does not, in and of itself, equate to control. *See Koch,*

---

[4] The record shows that each time the consultant made these observations, he contacted VC. VC then contacted All American and the issue was resolved.

11 S.W.3d at 157. Second, the fact that roofers were not properly utilizing fall protection on the day of the incident has nothing to do with whether VC, the general contractor, was responsible for controlling the means, manner, methods, or details of the work.[5]

On this record, the trial court properly concluded that VC did not exercise actual control. The summary judgment evidence establishes as a matter of law that neither VC nor All American owed a duty to Gonzalez. Therefore, the trial court did not err in granting summary judgment on the Estate's negligence claim.[6]

### Gross Negligence.

Appellant also contends the trial court erred in granting summary judgment on its gross negligence claim. We have already concluded the trial court did not err in granting summary judgment on the Estate's negligence claim. Negligence and gross negligence are not separable causes of action but are inextricably intertwined. *Ford Motor Co. v. Miles*, 967 S.W.2d 377, 390 (Tex. 1998). A finding of negligence is a prerequisite to a finding of gross negligence. *See Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Because summary judgment was proper on the negligence claim, the trial court did not err in also granting summary judgment on the gross negligence claim.

### Negligence Per Se.

Appellant also maintains the trial court erred in granting summary judgment on its negligence per se claim.[7] According to appellant, VC and All American are liable under a negligence per se theory for general violations of the OSHA regulations. In particular, appellant

---

[5] There is also no evidence that VC was aware that the roofers were not using fall protection on that day, or in any way approved of the conduct.

[6] Our resolution of this issue obviates the need to consider whether the trial court erred in concluding there was no proximate cause. *See* TEX. R. APP. P. 47.1.

[7] Negligence per se is a common law doctrine that imposes a duty based on a standard of conduct created by a penal statute. *See Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997).

states that in response to the motions for summary judgment, it "cited and quoted from Federal statutes and regulations and Texas appellate decisions, which prove that a genuine material fact exists . . . [and] pointed out that the construction contract and its general conditions required [VC] to comply with OSHA regulations." In response, appellees assert that the issue is waived because appellant fails to specify which OSHA regulations were allegedly breached. We agree with appellees. *See* TEX. R. APP. P. 47.1.

Moreover, even if appellant had not waived the issue by inadequate briefing, it is well-established that regulations promulgated under the OSHA statute neither create an implied cause of action nor establish negligence per se. *McClure v. Denham*, 162 S.W.3d 346, 353 (Tex. App.—Fort Worth 2005, no pet.). Because Texas law does not recognize OSHA regulations as a basis for a negligence per se claim in this context, the trial court did not err in granting summary judgment.

### *Breach of Contract*.

The Estate also argues the trial court erred in granting summary judgment on its breach of contract claim against VC. Specifically, the Estate contends that Gonzalez was a third party beneficiary of VC's contract with All American and VC's contract with the Villages. The Estate asserts "[s]ince [VC's] contract with [the Villages] required [VC] to ensure that each subcontractor maintained both general liability and worker's compensation coverage for all employees and subcontractors, [Gonzalez] is a third party beneficiary of those policies insuring whoever contributed to his fatal injuries." We are not persuaded by this argument.

Under the general law of contracts, a party must show either privity or third-party-beneficiary status in order to have standing to sue. *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 728 (Tex. App.—Dallas 2007, pet. denied). To qualify as a third-party beneficiary, a third party must show that it is either a donee or creditor beneficiary of the

contract, and not one who is benefited only incidentally by its performance. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).

There is a presumption against conferring third-party beneficiary status on non-contracting parties. *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007). To overcome this presumption, the contract must clearly set forth the intention to confer a direct benefit to a third party. *Id.* The intention of the contracting parties is controlling. *MCI Telecomms. Corp.*, 995 S.W.2d at 651. If the intention to contract or confer a direct benefit to a third party is not clearly and fully spelled out, enforcement by the third party must be denied. *Basic Capital Mgmt., Inc. v. Dynex Commercial Inc.*, 348 S.W.3d 894, 900 (Tex. 2011).

We glean the parties' intention from the words of their contract. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). "All doubts must be resolved against conferring third-party beneficiary status." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011); *see also First Union Nat'l Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 929 (Tex. App.—Dallas 2005, no pet.) (stating third-party beneficiary claims must fail if there is any reasonable doubt). Moreover, the fact that a person may have an interest in a contract's enforcement does not make him a third party beneficiary. *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 496 (Tex. App.—Dallas 2011, pet. denied).

VC's contracts with the Villages and All American require that each subcontractor maintain commercial general liability and worker's compensation insurance. According to the Estate, the existence of this clause, in and of itself, confers third-party beneficiary status on Gonzalez. We disagree.

The express language of the contracts reflects that none of the contracting parties intended to confer a benefit on Gonzalez. The subcontract agreement between VC and All American provides:

> Nothing contained in the Subcontract Documents shall create any contractual or third party beneficiary relationship between any parties other than the contractor and the subcontractor.

Similarly, the contract between the Villages and VC provides:

> Nothing contained in the Contract Documents shall create any contractual relationship between the Owner and any subcontractor.

The Estate offers no explanation as to how these specific expressions of the intent to exclude third-party beneficiaries fails to control the analysis. It is well established, however, that a third-party beneficiary will not be recognized unless the intent to make him so is clearly recognized in the contract. *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 757 (Tex. App.—Fort Worth 2012, pet. denied). The contracts relied upon by the Estate do not reflect any intent to benefit Gonzalez. Indeed, the contractual provisions referenced above show the signatories clear intent that there be no third-party beneficiaries to the contracts.

Although the Estate insists there is a genuine issue of material fact concerning third-party beneficiary status, the Estate fails to identify the evidence that allegedly raised such a fact. Stating that "[t]he Texas Supreme Court has held that a party injured by the insured is a third-party beneficiary of a liability insurance policy," the Estate cites *Broadnax v. Kroger Texas, LP*, No. 05-04-01306-CV, 2005 WL 2031783, at *14 (Tex. App.—Dallas Aug. 24, 2005, no pet.) (mem. op.). *Broadnax* does not stand for this proposition. In *Broadnax*, the appellant argued that the court should treat his situation like a liability insurance contract where a claimant against the insured becomes an intended third-party beneficiary. *Id.* In making this argument, appellant cited a case involving a third party's claim under an automobile liability policy where the Texas Supreme Court held that a party injured by an insured is a third party beneficiary of a liability insurance policy. This Court rejected appellant's argument, noting that the case relied upon "merely recognized that an injured party is a third party beneficiary of statutorily required coverage." *Id*. The Court concluded "there is no such statutory mandate in this case." *Id*. As a

result, the Court held the trial court did not err in granting summary judgment on appellant's third-party beneficiary claim. *Id.*

Likewise, there is no automobile insurance policy or statutory mandate in the case at bar. The summary judgment evidence here established that the parties to the contracts did not intend to confer third-party beneficiary status on Gonzalez or anyone else. The Estate failed to raise a genuine issue of material fact on this issue. Therefore, the trial court did not err in granting summary judgment on the Estate's third-party beneficiary claim.

## IV.    CONCLUSION

Having resolved all of the Estate's issues against it, we conclude the trial court did not err in granting summary judgment in favor of VC and All American. The judgment of the trial court is affirmed.

120277F.P05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PEDRO GONZALEZ & MARIA GOMEZ,
Appellants

No. 05-12-00277-CV      V.

VATR CONSTRUCTION LLC & ALL
AMERICAN ROOFING &
CONSTRUCTION, Appellees

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-09-09360-M.
Opinion delivered by Justice FitzGerald.
Justices Lang-Miers and Myers
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee VATR CONSTRUCTION LLC & ALL AMERICAN
ROOFING & CONSTRUCTION recover its costs of this appeal from appellant PEDRO
GONZALEZ & MARIA GOMEZ.

Judgment entered December 12, 2013

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE