**AFFIRM; and Opinion Filed July 30, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-17-00368-CV
_____

**ARA ARANA, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF VICTOR ARANA, DECEASED, AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES; EDGAR ARANA; PAOLA ARANA; AND ALEXANDER ARANA, Appellants**

**V.**

**VICTOR FIGUEROA, INDIVIDUALLY AND D/B/A VICTOR FIGUEROA CONSTRUCTION, Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-09585B-I**

## OPINION

Before Justices Lang-Miers, Evans, and Schenck
Opinion by Justice Schenck

Ara Arana, individually, as personal representative of the estate of Victor Hugo Arana, deceased, and on behalf of all wrongful death beneficiaries; Edgar Arana; Paola Arana; and Alexander Arana (the "Aranas") appeal the trial court's summary judgment in favor of Victor Figueroa, individually and d/b/a Victor Figueroa Construction, in this wrongful death and survival case. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a fatal accident that occurred on June 18, 2013, involving Victor Hugo Arana ("Hugo Arana"). At the time of the accident, he was working as part of a framing

crew on a home being built by K. Hovnanian Homes-DFW, L.L.C. ("Hovnanian"). He was employed by J.A.A. Construction ("JAA"), a company owned by his brother Antonio Arana, which had contracted with Victor Figueroa Construction to do the framing work on this Hovnanian project.

After the framing of the project was completed, an ENERGY STAR inspection revealed a problem with the ThermoPly insulation JAA installed. As a result, ENERGY STAR "red tagged" the project. Hovnanian notified Victor Figueroa of the problem, and he in turn asked Antonio Arana to take care of it. Hugo Arana and others on the framing crew went out to the project to fix the problem. While attempting to repair the insulation, Hugo Arana fell through the rafters and was fatally injured. He was not wearing a helmet or a safety harness at the time.

The Aranas filed suit against Victor Figueroa and other defendants, asserting negligence and negligence per se claims. Victor Figueroa sought traditional and no-evidence summary judgment on all of the Aranas' claims. In his motion for traditional summary judgment, Victor Figueroa asserted the evidence conclusively negated the existence of a duty, an essential element of the Aranas' negligence claim. He supported his motion for traditional summary judgment with evidence of the following: he hired JAA as an independent contractor to perform framing work at the job site; Hugo Arana was an employee of JAA; he did not direct JAA to send Hugo Arana to the job site on the day of the accident and was not aware JAA had sent Hugo Arana; he did not supply any equipment or tools for JAA to complete the work, rather, all tools and equipment were supplied by JAA or its crewmembers and employees; he did not give JAA or Hugo Arana any instructions or directions on how the job was to be performed, he simply gave JAA the plans submitted by Hovnanian; and he did not supervise the work and did not give any of the workers any instructions, directions, or guidance on what equipment to use or the means by which to frame the house or perform the work to be done on the day of the accident. In his motion for no-evidence

summary judgment, Victor Figueroa asserted there is no evidence he owed a duty to Hugo Arana, no evidence of a breach of a duty in any way, and no evidence that he breached a duty that proximately caused Hugo Arana's death. The trial court granted Victor Figueroa summary judgment on all of the Aranas' claims in an order that did not specify the grounds or the basis on which the judgment was granted. The trial court then severed the Aranas' claims against Victor Figueroa from their claims against the other defendants, and this appeal followed.

## STANDARD OF REVIEW

We review a trial court's granting of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, we review both no-evidence and traditional summary judgment motions, we first review the trial court's summary judgment under the standards of review for no-evidence summary judgment, potentially pretermitting the need for further analysis. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). No-evidence summary judgments are reviewed under the same legal sufficiency standard as directed verdicts. *Id.* The nonmovant must present evidence that raises a genuine issue of material fact on the challenged elements of the claim. TEX. R. CIV. P. 166a(i); *see S.W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). A no-evidence challenge will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Merriman*, 407 S.W.3d at 248.

## DISCUSSION

### 1. Negligence Claim

To prevail on their negligence claim, the Aranas must establish (1) existence of a legal duty owed by Victor Figueroa, (2) breach of that duty, and (3) damages proximately caused by the

breach. *See IHS Cedars Treatment Ctr. of DeSoto*, *Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). A threshold inquiry is whether Victor Figueroa owed a legal duty to Hugo Arana. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). The existence of a duty is a question of law for a court to decide from the facts surrounding the occurrence in question. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

The Aranas argue there is a genuine and material fact question regarding whether Victor Figueroa owed Hugo Arana a duty based on (1) a premises defect, and (2) Victor Figueroa's exercising some control over the manner, methods, means, and details of the work that he was doing at the time of the accident.

### a. Premises Owner or Occupier

Ordinarily, a person who does not own the real property must assume control over and responsibility for the premises before being exposed to potential liability for a dangerous condition existing on that property. *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986). "It is possession and control which generally must be shown as a prerequisite to liability." *Id.*; *see also Cty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) ("The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it."). As such, an independent contractor on a work site, who assumes control over and responsibility for the premises, is charged with the same duty as an owner or possessor of the premises. *See Page*, 701 S.W.2d at 834; *Rendleman v. Clarke*, 909 S.W.2d 56, 60 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd). Control over the premises can be proven by a contractual agreement assigning a right of control or by evidence of actual control. *See La China v. Woodlands Operating Co., L.P.*, 417 S.W.3d 516, 522 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

The Aranas claim that Victor Figueroa was "by contract" an "occupier" of "the premises" and owed a business invitee, such as Hugo Arana, duties associated with being a landowner.[1]  The Aranas, however, have failed to demonstrate how Victor Figueroa became an occupier of the premises by virtue of any contract.  We therefore pretermit discussion of the Aranas' premises liability arguments.  *See* TEX. R. APP. P. 47.1.

### b. Control

We next consider whether the Aranas presented evidence that Victor Figueroa owed a duty to Hugo Arana by virtue of having exercised the requisite control over the manner of his work.  As a general rule, an independent contractor, general contractor, or owner/occupier does not owe any duty to ensure that an independent contractor performs his work in a safe manner.  *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999) (per curiam); *Gonzalez v. VART Constr. LLC*, 418 S.W.3d 777, 784 (Tex. App.—Dallas 2013, no pet.).  The law concerning a general contractor's duties to a subcontractor's employees governs whether Victor Figueroa owed Hugo Arana a duty of care.  *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002); *Gonzalez*, 418 S.W.3d at 784.  A limited duty arises if a general contractor or premises owner retains control over a subcontractor's method of work or operative details to the point that the subcontractor is not entirely free to do the work in his own way.  *Chapa*, 11 S.W.3d at 155; *Gonzalez*, 418 S.W.3d at 784.  The general contractor's or premises owner's duty of reasonable care is commensurate with the control it retains over the subcontractor.  *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354, 355 (Tex. 1998) (per curiam).  The more the general contractor controls the independent contractor's work, the greater the general contractor's responsibility is for any injuries that result.  *Id.* at 356; *Gonzalez*, 418 S.W.3d at 885.  It is not enough that a contractor has merely a general

---

[1] More particularly, the Aranas claim Victor Figueroa had a duty to use reasonable care to keep the premises under his control in a safe condition, and that Victor Figueroa breached this duty by failing to mitigate the dangerous condition on the premises or by providing an adequate warning of the danger regarding walking on the open ceiling rafters on the premises without fall protection equipment.

right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations; rather there must be control over the methods or as to operative detail of the work. *Chapa*, 11 S.W.3d at 155. The critical aspect of control is its existence over the actual activity or condition that caused the injury. *Hoechst–Celanese*, 967 S.W.2d at 357; *Gonzalez*, 418 S.W.3d at 785.

A party can establish the right to control in two ways: by (1) a contractual right of control or (2) an exercise of actual control. *Gonzalez*, 418 S.W.3d at 785; *see also Dow*, 89 S.W.3d at 606. When a written contract assigns to the general contractor the right to control a subcontractor's employees, the plaintiff need not prove an actual exercise of control to establish a duty. *See Gonzalez*, 418 S.W.3d at 785; *see also Dow*, 89 S.W.3d at 606. Conversely, if the contract does not explicitly assign control over the manner of work to the general contractor, then the plaintiff must present evidence of the actual exercise of control by the general contractor. *See Gonzalez*, 418 S.W.3d at 785; *see also Dow*, 89 S.W.3d at 606.

The Aranas claim that because the agreement between JAA and Victor Figueroa Construction requires JAA to make corrections to satisfy red tags within 24 hours and allows Victor Figueroa to order extra work or to make changes to the scope of the work, and because Victor Figueroa's agreement with Hovnanian (1) requires the framing subcontractor to furnish all labor, materials and equipment, (2) provides the framing subcontractor has the sole and exclusive right to hire, fire, supervise and direct his workforce, (3) requires Victor Figueroa to obtain approval to further subcontract the framing work, and (4) requires the framing subcontractor to complete all work required to pass all inspections, to do service repairs, to have on site representatives and supervisors, and to be responsible for safety, there is a genuine and material fact question regarding Victor Figueroa's right of control. We disagree. The contract between

JAA and Victor Figueroa did not assign control over the manner of JAA's work to Victor Figueroa. *See Chapa*, 11 S.W.3d at 115 (right to order the work stopped or resumed, and to prescribe alterations and deviations is not enough). As to the agreement between Hovnanian and Victor Figueroa, JAA agreed to be bound by the terms of that agreement and became the framing subcontractor, so the provisions that the Aranas rely on actually establish JAA, not Victor Figueroa, was to furnish all labor, materials and equipment, and had the exclusive right and obligation to supervise and direct its workforce, and to do service repairs and complete all work required to pass inspections, and had responsibility for safety. To the extent any of those allocated responsibilities can be construed as conferring control, the control was assigned to JAA, not Victor Figueroa. As to the requirement that Victor Figueroa obtain approval to subcontract the framing work, that requirement does not assign to Victor Figueroa control over another's work. Accordingly, the contracts did not assign the right of control to Victor Figueroa, and the Aranas had to present evidence Victor Figueroa actually exercised control over the manner of the work being performed by Hugo Arana at the time of the accident.

First, the Aranas urge evidence Victor Figueroa facilitated the delivery of materials for JAA establishes he exercised control over Hugo Arana's work. The Aranas cite no authority to support a conclusion that facilitating the delivery of materials amounts, on its own, to an exercise of control over the means, methods, and details of a subcontractor's work for these purposes, and we have found none. Moreover, the Aranas fail to establish a nexus between facilitating the delivery of material to the job site and the activity that actually caused the injury—Hugo Arana standing on open ceiling rafters without safety equipment to fix the damaged insulation. Accordingly, this evidence did not raise a fact issue concerning whether Victor Figueroa owed a duty to Hugo Arana. *See Hoechst–Celanese*, 967 S.W.2d at 357; *Gonzalez*, 418 S.W.3d at 785.

Next, the Aranas argue the evidence raises a fact issue concerning whether Victor Figueroa had some control over Hugo Arana's work because Victor Figueroa had the right to tell framers and other workers how to perform their work. They rely on the following testimony.

- Testimony from Hovnanian's project manager, Phillip Fazzino, that they were to go through Victor Figueroa because he was the contractor they hired, that he would give the red tag from ENERGY STAR to "Victor Figueroa and he would hand it to his guys that actually worked on the job," which was JAA's crew, to make the necessary repairs.

- Victor Figueroa's testimony that he communicated to Antonio Arana that there was a red tag on the property and that is why JAA sent Hugo Arana to the property, and that he had been told the item needed to be fixed because an inspector was coming out that day, so he realized he needed to get Antonio Arana over there as quick as he could.

- Antonio Arana's testimony that Victor Figueroa "told [him] that we had to go because there was going to be an inspection. And when there's an inspection, we have to go at once" and acknowledgement that Victor Figueroa told him he needed him over there immediately because of the inspection.

But the Aranas do not explain how this evidence demonstrates that Victor Figueroa had control over Hugo Arana's work. It merely demonstrates that Victor Figueroa relayed to the subcontractor what the ENERGY STAR inspection revealed. In addition, other evidence confirms that Antonio Arana exercised control over his workers, not Victor Figueroa. Jose Paredes, who worked for Antonio Arana as a framer and was present when Hugo Arana fell, testified by deposition that Antonio Arana directed the framing crew where to work and when to begin work and Hugo Arana would tell his crew (one of the crews that worked for Antonio Arana) when to end work for the day. The Aranas also claim that Antonio Arana's testimony that he reported to Victor Figueroa establishes Victor Figueroa had the right to tell the workers how to perform their work. But having the right to receive reports does not equate to having the right to direct how work will be performed and is not enough to impose a duty. *See Chapa*, 11 S.W.3d at 155.

In addition, the Aranas argue that the evidence raised a fact issue regarding duty based on control because they showed that, at a specific time chosen by Victor Figueroa, he directed the

–8–

framers to inspect the open-rafted ceiling and attic and to correct the torn ThermoPly insulation prior to Hugo Arana's falling from those rafters. The evidence that the Aranas rely on includes:

- Testimony by Hovnanian's project manager, Phillip Fazzino, that they were to go through Victor Figueroa because he was the contractor they hired and that he would give the red tag from ENERGY STAR to "Victor Figueroa and he would hand it to his guys that actually worked on the job," which was "Antonio's crew," which was Hugo Arana's brother, to make the necessary repairs. He would go straight to Victor Figueroa because that is who they hired and the framing part of the inspection was in his scope of work. Fazzino confirmed that Victor Figueroa gave that work to JAA.

- While the Aranas further claim Fazzino testified he called Victor Figueroa to let him know there was a red tag for him to correct and then gave the red-tag to Victor Figueroa, and he sent it to his crews, or he handed it out from there, directing those men to do the work required of that red tag, Fazzino actually testified:

  Q.  And then you sent the men back to fix the ThermoPly issue?
  A.  I gave the letter to Victor and he sent it to his crews, yes.
  Q.  Right. You directed the men over there to do the work?
  A.  Right. I gave it to Victor and he handed it out from there, yes.

- Testimony of Victor Figueroa that he communicated to Antonio Arana at around 7:30 a.m. or so that there was a red tag on the property and that is why JAA sent Hugo Arana to the property, and that he had been told the item needed to be fixed because an inspector was coming out that day, so he realized he needed to get Antonio Arana over there as quick as he could.

- Testimony of JAA employee Jose Parades that the inspector was going to arrive at 9:00 that morning.

- Testimony of Antonio Arana concerning sending the crew out to fix the ThemoPly. Antonio Arana's testimony was:

  Q.  So do you know why Hugo was at the job site on the day he had his accident?
  A.  Yes.
  Q.  Can you tell us why?
  A.  Because Victor Figueroa called me and told me to tell him to go by this house where the accident occurred because there was something to do with an inspection.
  . . . .
  Q.  Did Victor Figueroa tell you it was really important that you get over there right now?
  A.  Yes. Yes. He told me that we had to go because there was going to be an inspection. And when there is an inspection, we have to go at once.
  . . . .
  Q.  Did Victor Figueroa tell you that he needed you over there immediately because of an Energy Star inspection?
  A.  Yes.

Q.     Did Victor tell you that he felt like he was rushed by K. Hovnanian Homes and that it was very important for you guys to go there right away?
A.     Yes.
. . . .
Q.     But Victor Figueroa told you that you had to send your guys over there and fix this problem?
A.     Yes.
. . . .
Q.     As far as how you would do the repairs, it all came down to what the Energy Star inspector saw?
A.     Yes.

- Testimony of Thomas Greg Johnson, Hovnanian's quality assurance advisor, concerning the frequency of ThermoPly issues.  Johnson's testimony was:

Q.     Is that uncommon, for there to be issues with the ThermoPly in the framing of a home?
A.     It happens on almost every house.
. . . .
Q.     But just this general concept of going back out and fixing the ThermoPly – or the "T-ply" as you called it – you said that's fairly common occurrence these days with the new energy requirements.  Is that right?
A.     Yes, sir.
. . . .
Q.     And on almost every house, you or Phillip [Fazzino] would have to send Victor and his guys back there to fix ThermoPly?
A.     Yes.

The Aranas argue this Court should conclude that there was a genuine issue of material fact concerning whether Victor Figueroa owed a duty to Hugo Arana to exercise reasonable care to protect him from work-related hazards because Victor Figueroa exercised control over "when and where the decedent had to work on the day of his on-the-job fall and gave 'on-site orders' regarding his having to get on the ceiling's rafters to repair the damage to the Thermo-Ply sheathing." *See Arsement v. Spinnaker Expl. Co*, 400 F.3d 238, 244 (5th Cir. 2005) (quoting *Hoechst–Celanese*, 967 S.W.2d at 357).  They argue that Victor Figueroa exercised "the requisite actual exercise of 'control over the manner in which the independent contractor's work was performed,'" *id.* (quoting *Bright*, 89 S.W.3d at 606), and that Victor Figueroa's control was related to the injury caused by the negligence.  The Aranas contend that Hugo Arana was not free to do

the work in his own way or when he chose, Victor Figueroa was "involved" in "controlling the timing and sequence" of Hugo Arana's work, and Victor Figueroa decided which "employee[] should perform which task and at what point in time." *Id.* (quoting *Bright*, 89 S.W.3d at 609).[2]

But the evidence that the Aranas rely upon does not reflect that Victor Figueroa supervised the work or gave the framers any instructions, directions, or guidance on what equipment to use or the means in which to perform the work to be done on the day of Hugo Arana's fatal accident. Rather, the evidence reflects that Victor Figueroa was not at the job site at the time of the accident; only the framers who worked for Antonio Arana were present. In addition, the evidence reflects that Hovnanian gave the information about the needed repairs to Victor Figueroa, who then passed it on to Antonio Arana, who in turn instructed Hugo Arana, who then, finally, instructed his framing crew members to fix the insulation.

Next, the Aranas claim Victor Figueroa's admission that his negligence was the sole proximate cause of the incident forming the basis of this lawsuit precludes summary judgment.[3] Notwithstanding the fact that it appears from Victor Figueroa's amended discovery responses that he made this admission in error, the threshold issue presented here is whether this request was appropriate.

The rules of civil procedure identify appropriate requests for admission as:

Written requests that the other party admit the truth of any matter within the scope of discovery, including statements of opinion or of fact or of the application of law to fact, or the genuineness of any documents served with the request or otherwise made available for inspection and copying.

---

[2] The Aranas claim *Qwest International Communication, Inc. v. AT&T Corp.*, 167 S.W.3d 324, 325–27 (Tex. 2005), supports their position that, by pushing to get the job done quickly, Victor Figueroa exercised control over the work to be done and owed a duty to Hugo Arana. We disagree. The issue presented in *Qwest* was whether having to work rapidly is sufficient to support exemplary damages, the jury having already found Qwest controlled its subcontractors' activities. The supreme court concluded that, without more, it was not.

[3] Request for Admission No. 26 requested that Victor Figueroa "Admit or deny that Defendant's negligence was the sole proximate cause of the incident forming the basis of this lawsuit." On February 1, 2016, Victor Figueroa responded, "Defendant objects to this Request to the extent it requires Defendant to render a legal opinion or conclusion as to what legally constitutes 'negligence' or 'sole proximate cause.' Without waiving and subject to this objection, admit." On February 15, 2017, the day before the trial court granted Victor Figueroa's motion for summary judgment, Victor Figueroa amended his response to deny the request. The amended response does not appear in the summary-judgment record; therefore, we will not consider it here.

TEX. R. CIV. P. 198.1. The primary purpose of the rule is to simplify trials by eliminating matters about which there is no real controversy, but which may be difficult or expensive to prove. *Sanders v. Harder*, 227 S.W.2d 206, 208 (Tex. 1950).

Although admissions of fact on file at the time of a summary judgment hearing are proper summary judgment proof and will, therefore, support a motion for summary judgment, *see* TEX. R. CIV. P. 166a(c), a request for admission asking a party to admit or deny a purely legal issue is of no effect. *Dallas Drain Co. v. Welsh*, No. 05-14-00831-CV, 2015 WL 4114976, at *5 (Tex. App.—Dallas July 8, 2015, no pet.) (mem. op.) (citing *Cedyco Corp. v. Whitehead*, 253 S.W.3d 877, 880 (Tex. App.—Beaumont 2008, pet. denied)); *see also Garcha v. Chatha*, No. 05-17-00084-CV, 2018 WL 1755391, at *4 (Tex. App.—Dallas Apr. 12, 2018, no pet.) (mem. op.) ("[A] request for admission asking a party to admit or deny a purely legal issue is improper, and a[n] . . . admission involving a purely legal issue is of no substantive, evidentiary effect."); *Hudson v. Comm'n for Lawyer Discipline*, No. 05-07-00775-CV, 2009 WL 225386, at *6–7 (Tex. App.—Dallas Feb. 2, 2009, pet. denied) (mem. op.) (answers constituting admissions of law are not binding on a court). This is so because the primary purpose of requests for admissions is to simplify trials by eliminating matters about which there is no real controversy—not to set traps for erroneous admissions akin to judgment by default. *Welsh*, 2015 WL 4114976, at *5. The rule was never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense. *Sanders*, 227 S.W.2d at 208.

The request for admission identified by the Aranas does not address any issues of fact relevant to the Aranas' negligence claims, nor does it apply the law to any relevant issues of fact. Thus, the request is outside the scope of discovery and is improper. TEX. R. CIV. P. 198.1; *see Cedyco*, 253 S.W.3d at 880. Accordingly, Victor Figueroa's response did not raise a fact issue precluding summary judgment.

We conclude that the Aranas did not raise an issue of fact concerning whether Victor Figueroa owed Hugo Arana a duty based on Victor Figueroa's control over Hugo Arana's work. Accordingly, we need not address their arguments concerning evidence of a breach of a duty. TEX. R. APP. P. 47.1.

### 2. Gross Negligence and Malice Claims

The Aranas further argue fact issues preclude summary judgment on their gross negligence and malice claims. A finding of ordinary negligence is a prerequisite to a finding of gross negligence. *Collective Asset Partners LLC v. Schaumburg*, 432 S.W.3d 435, 442 (Tex. App.—Dallas 2014, pet. denied). Accordingly, we conclude the trial court properly granted summary judgment on the Aranas' gross negligence claim because summary judgment was proper on their predicate negligence claim. *Id.; see also Seaway Prod. Pipeline Co. v. Hanley*, 153 S.W.3d 643, 659 (Tex. App.—Fort Worth 2004, no pet.) (concluding it was unnecessary to address gross negligence claim when party failed to present evidence in support of negligence claim). As to the Aranas' malice claim, Texas does not have a specific cause of action for "malice." Rather, it is an element when determining exemplary damages. TEX. CIV. PRAC. & REM. CODE ANN. §§ 41.001(7), 41.003.

We conclude the trial court did not err in granting no-evidence summary judgment to Victor Figueroa. Because our conclusion that the Aranas did not raise a genuine and material fact question concerning whether Victor Figueroa owed Hugo Arana a duty is dispositive, we do not address the Aranas' issue complaining about evidence presented by Victor Figueroa in support of his motion for traditional summary judgment.[4]

---

[4] The Aranas also argue Victor Figueroa's affidavit proving up the contracts between JAA and Victor Figueroa Construction and between Hovnanian and Victor Figueroa is not shown to be made on personal knowledge. We need not determine whether the Aranas' complaint concerning the affidavit is truly one of lack of personal knowledge or whether an objection was required to preserve the issue for appeal, because the Aranas presented the same evidence and the trial court could consider evidence in the record that is attached either to the motion or a response. *See Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 835 (Tex. 2018). Moreover, we have concluded this evidence did not establish a contractual right of control. We pretermit discussion of this issue. TEX. R. APP. P. 47.1.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

170368F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ARA ARANA, INDIVIDUALLY, AS
PERSONAL REPRESENTATIVE OF
THE ESTATE OF VICTOR ARANA,
DECEASED, AND ON BEHALF OF ALL
WRONGFUL DEATH BENEFICIARIES;
EDGAR ARANA; PAOLA ARANA; AND
ALEXANDER ARANA, Appellants

No. 05-17-00368-CV        V.

VICTOR FIGUEROA, INDIVIDUALLY
AND D/B/A VICTOR FIGUEROA
CONSTRUCTION, Appellee

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-09585B-I.
Opinion delivered by Justice Schenck.
Justices Lang-Miers and Evans
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee VICTOR FIGUEROA, INDIVIDUALLY AND D/B/A VICTOR FIGUEROA CONSTRUCTION recover its costs of this appeal from appellant ARA ARANA, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF VICTOR ARANA, DECEASED, AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES; EDGAR ARANA, PAOLA ARANA, AND ALEXANDER ARANA.

Judgment entered this 30th day of July, 2018.