**Affirm in part; Reverse and Remand in part; Opinion Filed December 22, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00572-CV

### ANDRES CHEVEZ, Appellant
### V.
### JERRY L. BRINKERHOFF AND JOHN B. ANDERSON, Appellees

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-015850-E**

## MEMORANDUM OPINION

Before Justices O'Neill, Evans, and Brown
Opinion by Justice O'Neill

Appellant Andres Chevez was injured while working for Martin Lopez as a bricklayer's helper on a construction project at appellee John B. Anderson's home. Appellee Jerry L. Brinkerhoff was the general contractor who hired Lopez. In two issues, Chevez contends the trial court erred in granting summary judgment for Anderson and Brinkerhoff. We affirm the trial court's judgment in part and reverse and remand in part. We issue this memorandum opinion because the dispositive issues are settled in law. TEX. R. APP. P. 47.4.

### BACKGROUND

Anderson hired Brinkerhoff to construct an addition to his home. Anderson and Brinkerhoff signed a written contract on April 18, 2008. Brinkerhoff in turn hired Martin Lopez as a subcontractor for the masonry work. Lopez prepared a written estimate for the work, but his agreement with Brinkerhoff was not otherwise reduced to writing. Brinkerhoff and Lopez had

worked together on previous jobs. Chevez had been working for Lopez for approximately two years before his injury. On November 25, 2008, Chevez was on the job site at the Anderson home for the first time. Chevez testified that he was walking on a scaffold holding bricks in his hands when "the board that I was walking on flipped, and I fell out of the scaffold." Neither Anderson nor Brinkerhoff was at the home when the accident occurred.

Chevez brought suit against Anderson, Brinkerhoff, and Lopez,[1] asserting claims for negligence and negligence per se[2] and alleging joint enterprise among the defendants. He sought to recover his medical expenses, pain and suffering and mental anguish, lost wages and loss of earning capacity, physical impairment, and exemplary damages. Both Brinkerhoff and Anderson filed traditional and no-evidence motions for summary judgment, asserting among other grounds that they owed no duty to Chevez. Chevez responded to each motion and also filed special exceptions and objections to each. The trial court granted Anderson's and Brinkerhoff's motions for summary judgment. This appeal followed.

## STANDARDS OF REVIEW

Appellees' motions for summary judgment included traditional grounds and no-evidence grounds.[3] When a party files a summary judgment motion on both traditional and no-evidence grounds, we first review the trial court's judgment under the standards of Rule 166a(i). *Ford*

---

[1] Chevez has dismissed his claims against Lopez, and Lopez is not a party to this appeal. Lopez filed for bankruptcy during the pendency of this case. This case was abated and closed until the bankruptcy court lifted the stay pursuant to an agreement between Lopez and Chevez. The agreed order from the bankruptcy court provided that although the state court litigation could proceed, Chevez could seek to recover only insurance proceeds, not any other assets of the debtor. Chevez and Lopez filed a Rule 11 agreement to reopen the trial court proceedings under the terms of the bankruptcy court's order. The trial court signed an order reopening the case, and discovery proceeded. Lopez's counsel withdrew, and Lopez proceeded pro se. Lopez did not seek summary judgment, and Anderson's and Brinkerhoff's motions do not address Chevez's claims against Lopez. After the trial court granted summary judgment in favor of Anderson and Brinkerhoff, Chevez filed a notice of nonsuit of his claims against Lopez, stating that "Plaintiff has remaining claims and causes of action in this cause against only Defendant MARTIN LOPEZ, which Plaintiff no longer wishes to pursue to trial." He then filed a "Motion for Entry of Order of Dismissal," requesting that in light of the trial court's summary judgment orders and Chevez's nonsuit, all of Chevez's claims be dismissed. The trial court granted this motion by written order, which recited that "this is a Final Judgment disposing of all parties and issues in this cause." As a result, the merits of Chevez's claims against Lopez have not been adjudicated.

[2] Chevez does not raise any issue on appeal regarding his negligence per se claims.

[3] Although the trial court only granted Anderson's traditional motion for summary judgment and granted both of Brinkerhoff's motions, we will discuss them together because the grounds were substantially the same and the lack of a no-evidence summary judgment for Anderson does not change the outcome of our opinion.

*Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). The non-movant, here Chevez, must produce summary judgment evidence raising a genuine issue of material fact to defeat the summary judgment under that provision. TEX. R. CIV. P. 166a(i); *Ford Motor Co.*, 135 S.W.3d at 600. A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced. *Morgan v. Anthony,* 27 S.W.3d 928, 929 (Tex. 2000). If the non-movant fails to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the movants' proof satisfied the rule 166a(c) burden. *Ford Motor Co.*, 135 S.W.3d at 600.

If the non-movant meets its burden under rule 166a(i), we consider the motion under rule 166a(c). In a traditional motion, the party moving for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). A defendant moving for summary judgment must disprove, as a matter of law, one of the essential elements of the plaintiff's causes of action, or may prove all of the elements of an affirmative defense. *Lear Sigler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990). We review the trial court's summary judgment decision de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005).

We review the trial court's rulings on special exceptions and on objections to summary judgment evidence for abuse of discretion. *Gatten v. McCarley*, 391 S.W.3d 669, 673 (Tex. App.—Dallas 2013, no pet.) (special exceptions); *Garner v. Fidelity Bank, N.A.*, 244 S.W.3d 855, 859 (Tex. App.—Dallas 2008, no pet.) (objections to summary judgment evidence). A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles. *See, e.g., Am. Bankers Ins. Co. of Florida v. Caruth*, 786 S.W.2d 427, 435 (Tex. App.—Dallas 1990, no writ).

DISCUSSION

**1. Summary judgment on negligence claims**

In his second issue, Chevez argues that the trial court erred by granting summary judgment for appellees. He raises six sub-issues. He contends he produced more than a scintilla of evidence that each appellee owed a duty to him; that each appellee had actual or constructive knowledge of a dangerous condition;[4] and that Brinkerhoff was an occupier of the premises.[5] He also argues there is a genuine issue of material fact whether appellees had actual or constructive knowledge of the dangerous condition. He contends there is a fact issue regarding whether appellees contractually retained or actually exercised control over the methods, manner, and means of the work he was doing when he fell. And he asserts that the trial court erred when it failed to find a genuine issue of material fact regarding whether each appellee is liable under his premises liability claim.

> **a. Duty of owner or general contractor to employee of independent contractor**

Generally, a premises owner or general contractor has no duty to ensure that an independent contractor safely performs his work. *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex. 1998) (per curiam). It is only when the general contractor or owner retains some control over the independent contractor's work that a limited duty arises. *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 154 (Tex. 1999) (per curiam). The duty of care is commensurate with the control retained. *Mendez*, 967 S.W.2d at 357. Control may be established by

---

[4] A defendant's actual or constructive knowledge of a dangerous condition is an element of a premises liability claim. *See Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983). But in the context of a claim arising from a premises defect created by the work activity of an independent contractor, the plaintiff must also prove the defendant had the right to control the work in addition to proving the elements of a premises liability claim. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997). Because we conclude, as discussed below, that neither Anderson nor Brinkerhoff had the right to control the masonry work, we do not reach the question of actual or constructive knowledge of a dangerous condition. *See id.*

[5] In his motion for summary judgment, Brinkerhoff contended that he could not be held liable under a premises liability theory because there was no evidence he was either an owner or occupier of the premises. Because a general contractor with control of the premises has the same duties as an owner or occupier, *see Olivo*, 952 S.W.2d at 527, whether Brinkerhoff was an occupier of the premises is not dispositive of any claim asserted by Chevez, and we need not address the question further.

contractual right or by an exercise of actual control. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002). Whether a contract gives a right of control is generally a question of law. *Id.* (citing *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001)); *see also Johnston v. Oiltanking Houston, L.P.*, 367 S.W.3d 412, 417 (Tex. App.—Houston [14th Dist.] 2012, no pet.). If a written contract assigns the right to control, then the plaintiff need not prove an actual exercise of control to establish a duty. *See Bright*, 89 S.W.3d at 606. But if the contract does not explicitly assign control over the manner of work to the general contractor or owner, or in the absence of a contractual agreement, then the plaintiff must present evidence that the owner or general contractor actually exercised control over the manner in which the independent contractor performed his work. *Id.*; *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1990).

There are two types of negligence claims that arise in this context: (1) a claim arising from an activity on the premises, in which the plaintiff is harmed by or as a contemporaneous result of the activity itself ("negligent activity"), and (2) a claim arising from a premises defect. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997). And, as we discuss in more detail below, there are two subcategories of premises defects for which an independent contractor's employee may seek to hold the general contractor liable. *Id.* First, there may be defects that exist on the premises when the business invitee entered or that are created through some means unrelated to the activity of the injured employee or his employer ("existing defects"). *Id.* Second, there may be defects the independent contractor or the injured employee created by its work activity ("defects from work activity"). *Id.* For both negligent activity and premises defect claims, the general contractor or owner must retain a right to control the injury-causing activity or condition for liability to attach. *Id.* at 528 (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985)).

Appellees' summary judgment motions addressed both negligent activity and premises defect theories. As described by Anderson, Chevez contends the negligent activity was conducting masonry work without fall protection equipment, and the premises defect was a loose board in the scaffold.

### b.      Claims against owner

Anderson did not retain any control over Lopez's work. Anderson's contract with Brinkerhoff, a standard form of the American Institute of Architects (AIA), granted the owner certain rights of approval and supervision. These general rights, however, are insufficient to establish any duty to a subcontractor's employees. *See Mendez*, 967 S.W.2d at 356 (general rights to order work stopped or resumed, inspect progress, receive reports, make suggestions or recommendations, or prescribe alterations do not establish control of contractor's methods of work) (quoting RESTATEMENT (Second) of Torts § 414 (1965)). If, as here, the owner does not have the right to control the means, methods, or details of the independent contractor's work, or if the injury did not arise from the control retained in the contract, no duty arises. *See Bright*, 89 S.W.3d at 606 (quoting *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 804 (Tex. 1999)).

Nor did Anderson exercise any actual control over the bricklaying and masonry work. The undisputed summary judgment evidence established that Anderson had not met, and had never interacted with, either Lopez or Chevez before Chevez's injury. Anderson testified that he was not home on the day of Chevez's accident. Anderson had no involvement with the scheduling of Lopez's work during the project or purchasing the materials needed for Lopez's masonry work. Chevez himself testified that he expected Lopez, not Anderson, to control or direct his work on the project. There is no evidence in the summary judgment record that Anderson retained either contractual or actual control over Lopez's work. The trial court's

summary judgment for Anderson on Chevez's negligent activity claim was proper. *See Chapa*, 11 S.W.3d at 158 (no fact issue precluding summary judgment for owner where no control).

The trial court's summary judgment was also proper on Chevez's claim that the loose board on the scaffold was a premises defect. He argues that Anderson had a duty to inspect the premises and warn of dangerous conditions which he knew or should have known to exist, citing *Lawrence*. *See Lawrence*, 988 S.W.2d at 225. In *Lawrence*, the court identified the two subcategories of premises defects (existing defects and defects from work activity) and explained that the duty to inspect and warn arises only in the existing defects subcategory. *Id.* The defect alleged by Chevez, however, is a defect from work activity, and therefore falls into the second subcategory. *See id.* For this subcategory, "the premises owner normally owes no duty to the independent contractor's employees because an owner generally has no duty to ensure that an independent contractor performs its work on the premises." *Id.* Unless the owner retains the right of supervisory control over the work that caused the injury, no duty arises. *See id.* As we have discussed, Anderson did not have a contractual right to control the masonry work and did not actually exercise control. *See id.* Anderson established his right to judgment as a matter of law on Chevez's premises defect claim. *See Ford Motor Co.*, 135 S.W.3d at 600.

### c.    Claims against general contractor

The same standards apply to Chevez's claims against Brinkerhoff. *See Chapa*, 11 S.W.3d at 155 n.1 (general contractor owes same duty as premises owner to independent contractor's employee; cases considering duty of owner and general contractor are used interchangeably). Brinkerhoff did not retain control over Lopez's work. The general rights of supervision granted Brinkerhoff in his contract with Anderson, as we have noted, are insufficient to establish a duty to Lopez's employees. *See Mendez*, 967 S.W.2d at 356; *Johnston*, 367 S.W.3d at 417.

Chevez also relies on certain general conditions set forth in another AIA form to argue that under the contract with Anderson, Brinkerhoff had a contractual right to control the means, methods, and details of Lopez's work.[6] Chevez cites to articles 3 and 10 of the form, which address the contractor's supervision of construction procedures and safety precautions. The court in *Deleon v. DSD Development, Inc.*, No. 01-03-00806-CV, 2006 WL 2506743, at *5–6 (Tex. App.—Houston [1st Dist.] Aug. 31, 2006, pet. denied) (mem. op.), considered and rejected the argument that these provisions imposed a contractual duty of care on a general contractor to a subcontractor's employee. Considering the contract as a whole, the contract's express language made clear that it governed only the relationship between the owner and the general contractor "and served to allocate the rights and responsibilities between them exclusively." *Id.* at *6. The court found it significant that the general terms and conditions also included a provision that the contract "shall not be construed to create a contractual relationship of any kind" between any persons or entities other than the owner and general contractor. *See id.* The court concluded that the purpose of the provisions was to insulate the owner from tort liability and "to create a duty of fiscal responsibility" flowing from the contractor to the owner for claims arising from the project. *Id.*; *see also Andrews v. DT Constr., Inc.*, 205 S.W.3d 4, 12–13 (Tex. App.—Eastland 2006, no pet.) (rejecting argument that injured employee of subcontractor was beneficiary of contract between owner and general contractor). We reached a similar conclusion in *Gonzalez v. VATR Construction, LLC*, explaining that an injured employee of a sub-subcontractor "cannot rely on upstream contracts" between a general contractor and a subcontractor to establish the existence of duty. 418 S.W.3d 777, 786 (Tex. App.—Dallas 2013, no pet.).

---

[6] Chevez argues that these general conditions were incorporated by reference into the contract between Anderson and Brinkerhoff. For purposes of this appeal, we presume that they were. We note, however, that the record includes only incomplete excerpts stamped "sample." Anderson and Brinkerhoff both offered summary judgment evidence of the contract they signed, and there is no evidence which, if either, of these different incomplete samples was included in the document Anderson and Brinkerhoff identified as their contract.

Chevez relies on *DeLeon v. Thos. S. Byrne, Ltd.*, No. 02-10-00438-CV, 2012 WL 42942, at *5 (Tex. App.—Fort Worth Jan. 25, 2012, no pet.) (mem. op.),[7] to argue that he raised a fact issue on contractual control. In *Byrne*, the contract between Byrne (the general contractor) and Sparkling Clean (the subcontractor) assigned control of the number of workers on the job to Byrne, as well as the right to substitute labor, materials, and equipment if Byrne determined Sparking Clean's to be insufficient. *Id.* Both of these areas of contractually-retained control related to the activity that caused the injury to DeLeon, a worker on the job. *Id.* Although four workers were required to operate the equipment in question, only three were on the job when DeLeon was injured. *Id.* Therefore, DeLeon raised a fact issue regarding contractual control by Byrne, and summary judgment for Byrne was error. *Id.*

*Byrne* is distinguishable. Most important, the contract in question in *Byrne* was between the general contractor and the subcontractor. *Id.* Here, the contract on which Chevez relies is between the owner and the general contractor, and specifically provides that it shall not be construed as creating a contractual relationship of any kind between any persons other than the owner and general contractor. As between Brinkerhoff and Anderson, the contract assigns responsibility to Brinkerhoff. The undisputed summary judgment evidence, however, is that there was an oral subcontract between Brinkerhoff and Lopez under which Lopez had responsibility for the means, methods, and details of the masonry work, as well as for the safety of his workers. This subcontract was the parallel to the contract construed in *Byrne*, not the contract between Anderson and Brinkerhoff. In *Gonzalez*, we concluded the injured worker could not rely on contracts to which he was not a party or a third-party beneficiary. *See Gonzalez*, 418 S.W.3d at 786.

---

[7] We refer to this case as "*Byrne*" to avoid confusion with the Houston *Deleon* case cited above.

In addition, the contract in *Byrne* expressly granted to the contractor control of specific activity relating to DeLeon's injury. *Id.* Here, the contract provides more generally that Brinkerhoff shall supervise and direct the work, and assigns sole responsibility and control to him over means and methods of construction. There is nothing relating to masonry or the equipment required for it. *Byrne* does not resolve the issue of contractual control in this case.

Chevez also argues that under article 9 of the contract, Brinkerhoff could not assign responsibility for the masonry work without obtaining Anderson's written consent, and therefore retained responsibility for Lopez's work and Chevez's injury. This provision, however, explicitly states that the owner and general contractor "bind themselves . . . to the other party hereto" and shall not assign the contract "as a whole" without written consent of the other. Nothing in this provision suggests that Brinkerhoff could not subcontract with Lopez for the masonry work without Anderson's written consent, or that Brinkerhoff retained contractual control over the means, methods, and details of Lopez's work so that a duty was created to Chevez.

As to actual control, the summary judgment evidence showed that Brinkerhoff hired several subcontractors to undertake specific work on the project. Brinkerhoff testified that responsibility for safety on the project was allocated to each subcontractor. Each subcontractor was to be responsible for the safety of his workers on the site. Brinkerhoff hired Lopez for the masonry work. Prior to beginning the work, Brinkerhoff met with Lopez to review the architectural plans so that Lopez understood the type of masonry work the project required. Brinkerhoff purchased the masonry materials necessary for Lopez to complete the work and had them delivered to the project site. Lopez testified that he and Brinkerhoff each paid for some of the materials. Lopez then directed his employees, including Chevez, on how to complete the masonry work. Lopez testified that Brinkerhoff did not direct Chevez or any of Lopez's other

–10–

workers on the masonry work to be done. Chevez himself testified that he did not receive any direction from Brinkerhoff. Lopez provided the tools necessary to complete the masonry work. During the project, Brinkerhoff did not interact with Chevez, and was not present on the site when Chevez was injured. Lopez, not Brinkerhoff, paid the masonry workers.

The summary judgment evidence also showed that Brinkerhoff may have owned the scaffolding from which Chevez fell. Brinkerhoff testified that he owns scaffolding that has been used on other job sites. But Brinkerhoff also testified that when he is not using the scaffolding at job sites, Lopez keeps or maintains it. Lopez may use the scaffolding on "different jobs, not necessarily my [Brinkerhoff's] jobs." Lopez in turn testified that he needed no direction from Brinkerhoff on how to set up, erect, or secure the scaffolding or place the walk boards on it. Chevez's complaint, that a board on the scaffolding was not properly secured, arose from Lopez's control, maintenance, and use of the scaffolding, not Brinkerhoff's possible ownership of it.

The summary judgment record demonstrates that Brinkerhoff did not control the means, manner, and details of the masonry work on the project, either by contract or in fact, and therefore did not owe a duty to Chevez. *See Gonzalez*, 418 S.W.3d at 788–89. Summary judgment was proper on Chevez's negligent activity claims against Brinkerhoff.

As to Chevez's premises defect claims against Brinkerhoff, Chevez again argues that Brinkerhoff had a duty to inspect the premises and warn of dangers which he knew or should have known to exist. But as we have explained, the duty to inspect and warn arises only as to existing defects unrelated to the independent contractor's work activity. *Oliva*, 952 S.W.2d at 527. No such defect is alleged by Chevez; his complaint is about the scaffold used in the masonry work. As we have already discussed, the summary judgment record shows that Brinkerhoff did not control the means, manner, and details of the masonry work on the project.

–11–

*See Gonzalez*, 418 S.W.3d at 788–89. Summary judgment was proper on Chevez's premises defect claims against Brinkerhoff. *See Bright*, 89 S.W.3d at 606–611. We overrule Chevez's second issue.

### 2. Sufficiency of motions

In his first issue, Chevez contends the trial court abused its discretion when it failed to sustain his objections and special exceptions to appellees' summary judgment motions. Chevez waived most of these objections and special exceptions by failing to obtain a ruling on them from the trial court. *See Gonzalez*, 418 S.W.3d at 783 (waiver of objections to form of summary judgment evidence); *Brooks v. Hous. Auth. of City of El Paso*, 926 S.W.2d 316, 322 (Tex. App.—El Paso 1996, no writ) (waiver of special exceptions).

Chevez was not required to specially except, however, that appellees' no-evidence motions failed to state specifically the elements of the causes of action on which they contend there was no evidence. *See Coleman v. Prospere*, No. 05-13-00068-CV, 2014 WL 4672456, at *2 (Tex. App.—Dallas Sept. 22, 2014, no pet. h.). This complaint may be raised for the first time on appeal. *See id.* (failure of no-evidence motion to challenge any element of claim or defense renders motion legally insufficient, which complaint may be raised for first time on appeal). And he was not required to except to appellees' motions on the ground that they did not address one or more of his causes of action. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993).

We reject Chevez's contention that appellees' motions are deficient regarding his negligence, gross negligence, and premises liability claims. Appellees' motions specify that appellees owe no duty to Chevez. Duty is an essential element of all of Chevez's claims grounded in negligence. *See, e.g., Stewart v. Columbia Med. Ctr. of McKinney Subsidiary, L.P.*, 214 S.W.3d 659, 663 (Tex. App.—Dallas 2007, pet. denied) (essential elements of negligence

claim are existence of legal duty, breach of that duty, and damages proximately caused by breach); *McClure v. Denham*, 162 S.W.3d 346, 353–54 (Tex. App.—Fort Worth 2005, no pet.) (where plaintiff failed to establish defendant owed duty of care, summary judgment was proper on negligence, negligence per se, and gross negligence claims).[8] Appellee's motions were sufficient to support summary judgment on Chevez's negligence and premises liability claims.

We also reject Chevez's contention that appellees' motions are deficient because they fail to address claims for breach of contract and fraud. Appellees were not required to move for summary judgment on claims that were not pleaded. *See SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354 (Tex. 1995) (defendant need not show that plaintiff cannot succeed on any theory conceivable in order to obtain summary judgment, but is only required to "meet the plaintiff's case as pleaded"). We therefore review Chevez's petition to determine if he pleaded causes of action for fraud and breach of contract. There is no cause of action pleaded for fraud, nor any allegation that any misrepresentations were made to Chevez on which he relied to his detriment; therefore, appellees were not required to seek summary judgment on any such cause of action. *See id.* Similarly, the petition contains references to a contract or agreement in paragraph 16, but Chevez does not plead that he was a party to any contract that was breached for which he seeks damages. He appears to contend that he is a beneficiary of a contract among the defendants, but the contract he alleges is an agreement to avoid liability for injuries and damages.[9] These allegations are made in the context of a claim that the defendants were engaged

---

[8] We also reject Chevez's argument that the motions were deficient for failure to address his claim for exemplary damages. This claim was premised on appellees' liability for gross negligence. Without underlying liability, Chevez's claim for exemplary damages fails. *See Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex. 1993) (recovery of punitive damages requires finding of independent tort with accompanying actual damages). Because appellees disproved the element of duty on Chevez's negligence and premises liability claims, it was not necessary to address or disprove damages or exemplary damages for those claims. *See Lear Siegler, Inc.*, 819 S.W.2d at 471 (defendant on summary judgment must disprove as matter of law one of essential elements of each of plaintiff's causes of action).

[9] In his appellate briefing, Chevez also argues he is a third party beneficiary to the contract between Anderson and Brinkerhoff. We have rejected this contention in our discussion of Chevez's second issue. In any event, this contention is not pleaded.

in a joint enterprise. We conclude that Chevez did not plead a cause of action for breach of contract, and appellees were not required to move for summary judgment on that ground. *See id.*

In paragraph 16 of his petition, however, Chevez alleged that the defendants (including Lopez) were engaged in a joint enterprise.[10] Neither of the appellees moved for summary judgment on this ground. Neither a traditional nor a no-evidence summary judgment may be upheld upon grounds not raised in the summary judgment motion. *Jose Fuentes Co., Inc. v. Alfaro*, 418 S.W.3d 280, 286 (Tex. App.—Dallas 2013, pet. filed) (en banc).

Appellees respond that joint enterprise is not a separate cause of action, so that it was not necessary to address it in their motions for summary judgment. In *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 14 (Tex. 1974), the court explained that "[t]he theory of joint enterprise is to make each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other." *See also In re Tex. Dep't of Transp.*, 218 S.W.3d 74, 78 (Tex. 2007) (orig. proceeding) (per curiam) (joint enterprise is theory involving derivative liability in which one enterprise participant may be held liable for cause of action proven against another enterprise participant). The *Shoemaker* court "quoted and expressly adopted the Restatement's definition of a joint enterprise." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2003). In *Wolff*, the court explained that "[a]lthough we have considered the concept of joint enterprise liability in several cases after *Shoemaker*, we have not altered *Shoemaker*'s adoption of the Restatement definition of joint enterprise." *Id.* at 526. The four elements

---

[10] Chevez's pleading is that defendants "engaged in a joint enterprise, partnership, joint venture and/or agency." He recites the four elements of joint enterprise in paragraph 16 of his petition. He does not make any separate pleading as to partnership, joint venture, or agency; each mention in his petition and appellate briefing lists the four theories together. We note that the elements of proof of these theories differ from those of joint enterprise. *See Blackburn v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, 58 S.W.3d 263, 273 (Tex. App.—Fort Worth 2001, pet. denied). Although Chevez did not make any allegations to support a claim under these different theories, neither did appellees specially except or obtain a ruling from the trial court regarding defects in Chevez's pleading. *See* TEX. R. CIV. P. 90 (pleading defects waived if not specifically pointed out in writing and brought to attention of trial court). Unlike the purported fraud and breach of contract claims, for which there were no allegations "sufficient to give fair notice of the claim involved," *see* TEX. R. CIV. P. 47(a), these theories were at least mentioned in Chevez's petition. *Cf. Maswoswe v. Nelson*, 327 S.W.3d 889, 894 (Tex. App.—Beaumont 2010, no pet.) (reviewing court should liberally construe plaintiff's petition to assert any claim that could be reasonably inferred from specific language of petition, but cannot use liberal construction as license to read into petition claim it does not contain). Because none of the parties specifically address these additional theories on appeal, however, we address only the allegations of joint enterprise.

–14–

"essential to a joint enterprise" are (1) an agreement, express or implied, among the members of a group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members, and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Id*. (citing *Shoemaker*, 513 S.W.2d at 16–17).

Where parties are engaged in a joint enterprise, the negligence of one party may be imputed to the other. *See Shoemaker*, 513 S.W.2d at 14 ("The theory of joint enterprise is to make each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other."). Therefore, if Chevez establishes that one of the defendants was negligent, and also establishes the elements of a joint enterprise among the defendants, the negligence of one defendant may be imputed to the others. *See id.* Anderson's and Brinkerhoff's motions for summary judgment do not address Chevez's allegations that they were responsible for injuries on the job site because they were engaged in a joint enterprise with Lopez, and Lopez was negligent.

Appellees contend that because they obtained summary judgment on Chevez's negligence claims against them, there are no grounds for any liability under a joint enterprise theory, citing *G&H Towing Co. v. Magee*, 347 S.W.3d 293, 296 (Tex. 2011). In *Magee*, the court considered whether summary judgment was proper on a vicarious liability claim that was not addressed in the summary judgment motion. The court determined that any error in granting summary judgment on a claim not addressed in the motion was harmless because the trial court also correctly granted summary judgment on the theory of liability on which the vicarious liability claim was premised. *Id.* at 297–98. This case differs from *Magee* in that the summary judgment does not address negligence on the part of Lopez which might be imputed to appellees. Even though Chevez has nonsuited his claims against Lopez, he may still attempt to prove in the

trial court that Lopez was negligent and was engaged in a joint enterprise with appellees for which appellees are liable. *See, e.g., David L. Smith & Assocs., L.L.P. v. Stealth Detection, Inc.*, 327 S.W.3d 873, 878 (Tex. App.—Dallas 2010, no pet.) (theory of joint enterprise "imputes liability to one who, although he did no wrong, is so closely connected to the wrongdoer that it justifies the imposition of vicarious liability"). We sustain the portion of Chevez's second issue complaining of the trial court's summary judgment on his allegation that appellees were engaged in a joint enterprise with Lopez.

## CONCLUSION

We sustain Chevez's first issue in part and overrule it in part. We overrule his second issue. We affirm the trial court's judgment in part and reverse and remand only as to the claim of joint enterprise which was not addressed in the motions for summary judgment.


/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE


130572F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANDRES CHEVEZ, Appellant

No. 05-13-00572-CV　　　V.

JERRY L. BRINKERHOFF and JOHN B. ANDERSON, Appellees

On Appeal from the 101st Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-10-015850-E.
Opinion delivered by Justice O'Neill, Justices Evans and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment granting summary judgment on appellant's claims that appellees were engaged in a joint enterprise. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 22nd day of December, 2014.