**Affirm and Opinion Filed May 23, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-01337-CV

## IN THE INTEREST OF Z.E., A CHILD

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-22-00703-W**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Breedlove
Opinion by Justice Molberg

Father and Mother appeal from the trial court's decree terminating their parental rights to their child, Z.E. Father raises five issues, which we address and overrule below. Mother's appointed counsel has filed a motion to withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967),[1] concluding that no arguable grounds for reversible error exist and that Mother's appeal is frivolous and without merit. Mother's counsel and this Court both provided Mother a copy of the

---

[1] *Anders* concerns the "duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal." 386 U.S. at 739. *Anders* procedures apply in appeals from a trial court's decree terminating parental rights where, as here, the appellant's appointed counsel concludes there are no non-frivolous issues to assert on appeal. *In re D.D.*, 279 S.W.3d 849, 850 (Tex. App.—Dallas 2009, pet. denied).

*Anders* brief and advised Mother of her right to examine the appellate record and file a pro se response. She filed a response that states, in part, there is "alot of he say she say and no real suffient [sic] evidence to terminate my rights to [Z.E.]," thus expressing, in essence, a belief the evidence is insufficient to support the termination of her rights to Z.E.. We affirm the trial court's decree and deny Mother's counsel's motion to withdraw. Because the issues are settled, we do so in a memorandum opinion. *See* TEX. R. APP. P. 47.4.

## I. TRIAL COURT BACKGROUND

Z.E. was born in early 2016. Shortly after his fifth birthday, the Department of Family and Protective Services filed an original petition for emergency protection, conservatorship, and termination of Mother's parental rights to Z.E. and two other children.[2] On March 5, 2021, the trial court issued an ex parte order for emergency care and temporary custody of the children, appointing the Department as temporary managing conservator. The trial court also appointed a court appointed special advocate (CASA) and a guardian ad litem (GAL) to represent the children.[3]

In May 2021, the Department amended its petition, adding, among other things, an allegation regarding Father's parentage of Z.E., and allegations seeking establishment and termination of Father's parental rights to Z.E. Later that year,

---

[2] No issue regarding the other two children is presented for our review in this appeal. The trial court severed this case from the cases involving the other two children in August 2022.

[3] The court later modified the GAL appointment by entering an order indicating the person appointed—who is also an attorney—would serve in a dual role of guardian ad litem and attorney ad litem. For purposes of this opinion, we refer to that person simply as GAL.

GAL filed a petition in intervention seeking to terminate Mother's and Father's rights to Z.E. as well, and GAL later amended its petition.

In the Department's and GAL's latest-filed pleadings, each alleged, among other things, that Father is Z.E.'s alleged father; termination of Parents' rights to Z.E. was in Z.E.'s best interest; Father and Mother committed acts described in family code section 161.001(b)(1)(D) and (E); Mother also committed acts under 161.001(b)(1)(L); and Father also committed acts under section 161.001(b)(1)(Q).

About two months before trial began, GAL filed a motion to admit videotaped forensic interview statements of Z.E. and his brother and to use them in lieu of their testimony at trial. *See* TEX. FAM. CODE 104.002. The trial court granted the motion, admitting the videos "for all purposes," and stating, in part, that the use of such statements in lieu of the children's trial testimony is "necessary to protect the [children's] welfare."

According to the record before us, a bench trial began August 29, 2022, and was then recessed. Trial was continued in person and via Microsoft TEAMS on November 14, 2022, and concluded the next day. Father, who was jailed in another state at the time of trial, attended remotely.

When trial continued on November 14, 2022, Mother moved to dismiss the case against her, arguing the trial court lacked jurisdiction because there was no record the March 7, 2022 dismissal deadline was extended before it expired. *See* TEX. FAM. CODE § 263.401(a). The trial court heard the motion and denied it.

–3–

At the trial's conclusion, the trial court pronounced its ruling. In both its pronouncement and in the later decree, the trial court found Father committed the conduct described in family code section 161.001(b)(1)(D), (E), and (Q), found Mother committed the conduct in section 161.001(b)(1)(D), (E), and (L), and found termination of each of their parental rights was in Z.E.'s best interest.

After these pronouncements, the trial court stated:

[THE COURT]: The Court will appoint the Department as permanent managing conservator. CASA will continue as a guardian. SMU will continue as attorney ad litem. The case will be transferred to the permanency court.

The Court is ordering the Department to look at the paternal cousin[4] for a possible placement in Illinois since she has been approved in Illinois before, and she is a family placement. The Court orders that happen within the next 90 days.

The Court finds that all orders entered today are in the best interest of this child. All right, anything else?

[DEPARTMENT'S COUNSEL]: Judge, Department will request an expedited ICPC[5] order if we can on the cousin.

THE COURT: Okay. Expedited ICPC request is granted. All right, anything else?

[DEPARTMENT'S COUNSEL]: No, ma'am.

[GAL]: No, Your Honor, thank you.

THE COURT: All right. Thank you-all.

---

[4] The initials of the cousin referred to here and in Father's fifth issue are N.L.B.

[5] ICPC refers to the Interstate Compact on the Placement of Children. *See generally* TEX. FAM. CODE § 162.101–.107 (adopting compact in Texas).

On November 17, 2022, two days after trial concluded, the trial court entered an order of home study requiring Department to institute an ICPC home study request on the paternal cousin referred to in the above exchange.

The trial court signed the decree on December 7, 2022. The decree did not mention the November 17, 2022 order but did refer the case to the local child protection and permanency court for further hearings and stated that court was to conduct a permanency hearing after final order no later than ninety days after the trial court rendered the decree. The Department, GAL, and counsel for Father all signed the decree, approving it as to form, while Mother's appointed counsel declined to do so.

After the decree was signed, no party requested written findings of fact or conclusions of law, requested any modification of the decree, or filed a motion for new trial. Father and Mother timely appealed.

## II. PARENTS' JOINT MOTION TO DISMISS IN OUR COURT

On appeal, Parents have not raised any issue regarding the trial court's denial of Mother's motion to dismiss. However, before filing their briefs, and similar to Mother's argument in the trial court, Father and Mother filed a joint motion to dismiss the appeal, asking us to dismiss the appeal for want of jurisdiction, on the theory that the trial court's decree was void, when there was no record the March 7, 2022 dismissal deadline was extended before it expired.

We denied Parents' motion because GAL filed its petition in intervention before the dismissal deadline passed, and there is nothing in the record to indicate the trial court lost its jurisdiction to decide GAL's petition. *See In re A.W.*, No. 05-22-00053-CV, 2022 WL 195573, at *3 (Tex. App.—June 6, 2022, pet. denied) (mem. op.) (concluding similar arguments lacked merit); *see also In re C.D.*, No. 05-21-00768-CV, 2022 WL 484559, at *2 (Tex. App.—Dallas Feb. 17, 2022, orig. proceeding) (mem. op.); *In re L.D.R.*, No. 05-21-00369-CV, 2021 WL 5104376, at *3 (Tex. App.—Dallas Nov. 3, 2021, no  pet.) (mem. op.) (reaching similar conclusions). Parents have not asked us to reconsider our ruling on their motion.

## III.  REVIEW STANDARDS

### A.    Evidentiary Sufficiency in Parental Termination Cases

The involuntary termination of parental rights involves fundamental constitutional rights. *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980). A natural parent's desire for—and right to—the companionship, care, custody, and management of his or her children is an interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982). A termination order is final and irrevocable, divesting for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see In re M.S.*, 115 S.W.3d 534, 549 (Tex. 2003) (referring to termination of a parent's right to his or her child as "traumatic, permanent, and irrevocable.")

Section 161.001(b)(1) of the family code lists twenty-one predicate acts that, if found by clear and convincing evidence, allow a court to terminate a parent-child relationship if the court also finds that termination of the relationship is in the child's best interest. *See* TEX. FAM. CODE §§ 161.001(b)(1)(A)–(U); 161.001(b)(2). Only one predicate finding is necessary to support a judgment of termination of parental rights when a finding is also made that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). However, due to the significant collateral consequences that may result from such findings, even when we affirm the termination of a parent's rights on another ground, we must consider the sufficiency of the evidence regarding subsections (b)(1)(D) and (E) when raised on appeal,[6] although the extent to which we must do so in an *Anders* context is unclear. *See In re E.K.*, 608 S.W.3d 815, 815 (Tex. 2020) (Green, J., concurring in denial of petition for review) (stating the issue of how *In re N.G.* applies to parental termination appeals in which the appellant's counsel has filed an *Anders* brief is "an important question" [the Texas Supreme Court] should answer").

"Because the fundamental liberty interest of a parent in the care, custody, and control of his child is one of constitutional dimensions, involuntary parental termination must be strictly scrutinized." *In re C.V.L.*, 591 S.W.3d 734, 748 (Tex. App.—Dallas 2019, pet. denied). While we acknowledge the constitutional

---

[6] *See In re N.G.*, 577 S.W.3d 230, 234–37 (Tex. 2019) (per curiam) (explaining why, though not in an *Anders* context).

dimensions of parental rights, we also recognize the imperative that the "emotional and physical interests of the child not be sacrificed merely to preserve" those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The evidence supporting termination must be clear and convincing before a court may involuntarily terminate a parent's rights. *Holick*, 685 S.W.2d at 20.  Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.  Termination of parental rights requires proof by clear and convincing evidence that (1) a parent committed one or more of the enumerated statutory acts in section 161.001(b)(1) of the family code, and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE § 161.001(b).  When the burden of proof requires clear and convincing evidence, traditional legal sufficiency and factual sufficiency standards are inadequate.  *See In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002)).

As a result, in conducting legal sufficiency review in a parental termination case, we determine whether the evidence, viewed in the light most favorable to the finding, is such that a reasonable factfinder could have formed a firm belief or conviction that its finding was true.  *Id*. at 266.  "[L]ooking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so."  *Id*.  We disregard all evidence a reasonable factfinder could have disbelieved or found incredible.  *Id*.

In factual sufficiency review in a parental termination case, we consider the entire record, including evidence both supporting and contradicting the finding, and determine whether a reasonable factfinder could have formed a firm conviction or belief about the truth of the allegation. *In re C.H.*, 89 S.W.3d at 25–26. We "consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## B. Other Standards

Under the Texas Family Code, "The procedural and substantive standards for termination of parental rights apply to the termination of the rights of an alleged biological father." TEX. FAM. CODE § 161.002(a). While subsection (b)(1) allows the Department to summarily terminate the rights of an alleged biological father who does not assert his paternity, an alleged biological father's admission of paternity "gives him the right to proceed to trial and require the state to prove by clear and convincing evidence that he engaged in one of the types of conduct listed" in section 161.001(b)(1) and "that termination is in the best interest of his child." *Phillips v. Tex. Dep't of Protective & Regul. Servs.*, 25 S.W.3d 348, 357 (Tex. App.—Austin 2000, no pet.); *see In re Z.A.*, No. 05-21-00126-CV, 2021 WL 3477713, *6 (Tex.

App.—Dallas Aug. 6, 2021, no pet.) (mem. op.) (quoting *Phillips*, stating, "an alleged father who admits paternity can 'stave off summary termination of his rights [under section 161.002(b)(1)] and require[ ] the Department to meet the high burden of proof found in section 161.001.'"). We assume, but do not decide, Father had that right here.[7]

Generally, to preserve an issue for appellate review, the record must show a complaint was made to the trial court "by a timely request, objection, or motion" that, among other things, "states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion." TEX. R. APP. P. 33.1(a). However, in a civil nonjury case, as this case is, "a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief." TEX. R. APP. P. 33.1(d).

Under rule of civil procedure 296, "[i]n any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law." TEX. R. CIV. P. 296. We may not look to any

---

[7] The family code states, "A respondent in a proceeding to adjudicate parentage may admit to the paternity of a child by filing a pleading to that effect or by admitting paternity under penalty of perjury when making an appearance or during a hearing." TEX. FAM. CODE § 160.623(a). While this is not "a proceeding to adjudicate parentage," *see id.*, Father admitted in both his written filings and in his sworn testimony in the trial court that Z.E. is his child. Father twice referred to Z.E. as "my child" in a pro se letter he filed in the trial court, which declared it was made "under the penalty of perjury." Father also referred to himself as "Respondent Father of [Z.E.], the subject of this suit" in in his original answer, and at trial, Father testified he is the father of Z.E. Neither the Department nor GAL dispute Father's parentage of Z.E. Though we have not located any such determination in the record before us, when the Department's caseworker testified at trial, she answered, "Yes" when Father's counsel asked her if "during the pendency of the case it has been determined that [Father] is the biological father of [Z.E.]."

comments the judge made at the conclusion of a bench trial as being a substitute for findings of fact and conclusions of law. *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984) (per curiam). Where, as here, findings of fact and conclusions of law are not properly requested and none are filed, the trial court's judgment implies all findings of fact necessary to support it, *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017), and we must affirm the judgment of the trial court if it can be upheld on any legal theory that finds support in the evidence. *In re W.E.R.*, 669 S.W.2d at 717.

### IV. MOTHER'S APPEAL

After we denied Parents' joint motion to dismiss, Mother's counsel filed an *Anders* brief concluding that no arguable grounds for reversible error exist and that Mother's appeal is frivolous and without merit. Mother's counsel also filed a motion to withdraw as counsel, which repeated counsel's conclusion and asked that Mother be allowed to file a pro se brief or a brief through other counsel.

Mother filed a pro se response reflecting she disagrees with the termination of her rights to Z.E. When read reasonably and liberally,[8] her response claims, in essence, that insufficient evidence exists to support the termination of her parental rights to Z.E. But aside from simply making a conclusory statement in that regard,[9]

---

[8] *See Gonzalez v. VATR Const. LLC*, 418 S.W.3d 777, 784 (Tex. App.—Dallas 2013, no pet.) ("Appellate courts must construe briefing requirements reasonably and liberally[.]").

[9] Mother's pro se response states, there is "alot of he say she say and no real suffient [sic] evidence to terminate my rights to my son."

Mother fails to cite to the evidence, record or legal authorities in support and fails to make any specific argument. In another context, we have concluded that a brief of this nature is inadequate and fails to preserve any issue for appellate review.[10]

But even if we assume without finding Mother's pro se response is adequate—as we do here—we need only determine whether there are any arguable grounds for reversal. Previously, we stated:

> In reviewing an *Anders* brief, this Court is not required to address the merits of each claim raised in the brief or a pro se response. *See Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005). Rather, this Court's duty is to determine whether there are any arguable grounds for reversal and, if so, to remand the case to the trial court so that new counsel may be appointed to address the issues.

*In re D.D.*, 279 S.W.3d at 850; *see In re J.A.*, No. 05-16-00825-CV, 2016 WL 5945003, *1 (Tex. App.—Dallas Oct. 13, 2016, no pet.) (mem. op.) (same).

Similar to the situation in *J.A.*, *see id.* at *2, in his *Anders* brief, Mother's counsel provides his professional evaluation of the record demonstrating why there are no arguable grounds for reversal and concluding that Mother's appeal is frivolous and without merit. *See Anders*, 386 U.S. at 744. Mother's counsel also details in his *Anders* brief the compelling evidence supporting the implied findings against Mother, including, but not limited to, evidence regarding her actions under subsections (b)(1)(D) and (E), some of which we also detail below.

---

[10] *See Gonzalez*, 418 S.W.3d at 784 (discussing briefing requirements under rule of appellate procedure 38.1 and stating, "Appellate courts must construe briefing requirements reasonably and liberally, but a party asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law support his contention" and concluding issue was not preserved for appellate review).

Having thoroughly reviewed the record ourselves, we conclude, as Mother's counsel did, there are no arguable grounds for reversal. We independently reviewed the entire record and counsel's *Anders* brief, find nothing in the record that could arguably support the appeal, and agree the appeal is frivolous and without merit. Also, while the extent to which *In re N.G.*[11] applies in an *Anders* context is unclear,[12] we have specifically considered the trial court's implied findings as to Mother under family code sections 161.001(b)(1)(D) and (E), and we find no non-frivolous issues that could be raised on appeal with respect to those implied findings. *See In re J.A.R.*, 658 S.W.3d 921, 925 (Tex. App.—El Paso 2023, pet. denied) (doing and concluding the same as to the trial court's findings in that case); *In re M.M.*, 584 S.W.3d 885, 891 (Tex. App.—Amarillo 2019, pet. denied) (Quinn, C.J., concurring) (expressing belief that an appellate court would further justice by assuring in an *Anders* context that findings based on subsections (b)(1)(D) and (E) have sufficient evidentiary support and that an appellant's counsel would serve his client by addressing and detailing the sufficiency of the evidence underlying such findings when concluding the *Anders* procedure is the correct avenue to follow).

---

[11] *See In re N.G.*, 577 S.W.3d at 234–37 (holding "that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under section 161.001(b)(1)(D) or (E) of the Family Code.").

[12] *See In re E.K.*, 608 S.W.3d at 815 (Green, J., concurring in the denial of the petition for review, stating the court "should answer" the "important question" of "how *In re N.G.* applies to parental termination appeals in which the appellant's counsel has filed an *Anders* brief," and explaining why the question was not, in his view, squarely before the court in that case).

Here, evidence supporting these implied findings includes, but is not limited to, photographs of permanent scarring on Z.E. on multiple parts of his body; Z.E.'s forensic interview which included statements that he "got a whipping all the time" by Mother and that Mother hit him with an extension cord and the silver part of a belt; Mother's admission at trial that she did hit and cause injuries to Z.E. with an extension cord, which she claimed was a one-time event, though she provided inconsistent testimony regarding its timing; Mother's testimony that she had multiple partners that "beat [her] children" but that she made no report about that; Mother's agreement that the children's "home environment for probably as long as they can remember includes the adults in their world beating them," and Z.E.'s therapist's testimony that the only person Z.E. mentioned as being responsible for hitting him was Mother.

Accordingly, we overrule Mother's issue but deny Mother's counsel's motion to withdraw. Because this is a termination of parental rights case, appointed counsel's duties to Mother continue through the filing of a petition for review in the Texas Supreme Court, and a motion to withdraw in our Court may be premature unless good cause is shown. *See In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (per curiam) (stating, "In light of our holding, however, an *Anders* motion to withdraw brought in the court of appeals, in the absence of additional grounds for withdrawal,

–14–

may be premature.");[13] *see also J.A.*, 2016 WL 5945003, at *2 (applying *P.M.* and reaching similar conclusion).  No good cause has been offered or shown.

## V. FATHER'S APPEAL

Father raises five issues on appeal.  We construe Father's first four issues as challenging the legal and factual sufficiency of the evidence to support the implied finding he committed the acts described in family code sections 161.001(b)(1)(D), (E), and (Q) (first three issues) and the implied finding that termination of his rights was in Z.E.'s best interest (fourth issue).[14]   Alternatively, in his fifth issue, Father asks us to modify the decree to reflect the trial court's oral pronouncement that the Department continue with an ICPC placement investigation on Father's cousin.[15]

---

[13] *In re P.M.* also indicates that Mother's appointed counsel may satisfy his obligation in the supreme court by "filing a petition for review that satisfies the standards for an *Anders* brief."  520 S.W.3d at 27.

[14] Father frames his first four issues as follows:

> 1. Whether or not the parental rights of an alleged father may be terminated under TEX. FAM. CODE §161.001(b)(1)(D) based on acts which occurred before birth, before the alleged father had any knowledge of his status as an alleged parent, and where the record establishes that a parent did not influence the child's environment.

> 2. Whether or not the parental rights of an alleged father may be terminated under TEX. FAM. CODE §161.001(b)(1)(E) based solely on a criminal conviction without evidence of knowledge and without evidence of a conscious course of conduct.

> 3. Whether or not the parental rights of an alleged father may be terminated under TEX. FAM. CODE §161.001(b)(1)(Q) based upon a conviction for a reckless act, and where there is evidence of a plan and effort to support a child after gaining knowledge of alleged paternity.

> 4. Whether or not the best interests of a child require the termination of an alleged father's parental rights when the only evidence in the record establishes that the termination of a parent's rights is unnecessary to accomplish a child's best interests.

[15] Father frames his fifth issue as follows:

> 5. Whether or not the court's judgment, as reduced to writing, accurately reflects the judgment of the trial court as orally announced.

–15–

### A. Father's Acts Under 161.001(b)(1)(D) and (E)

#### 1. Applicable Law

If a best-interest finding under subsection (b)(2) is also made, parental rights may be terminated if clear and convincing evidence supports a finding under subsection (b)(1)(D) that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" or a finding under subsection (b)(1)(E) that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *See* TEX. FAM. CODE §§ 161.001(b)(1)(D), (E).

Proof of endangerment is required under both subsections (b)(1)(D) and (E). *Id.* §§ 161.001(b)(1)(D), (E). "Endanger" means to expose to loss or injury or to jeopardize a child's emotional or physical health, but it is not necessary that the conduct be directed at the child or that the child actually suffer an injury. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam); *In re J.D.B.*, 435 S.W.3d 452, 463 (Tex. App.—Dallas 2014, no pet.).

At least three distinctions exist between subsections (b)(1)(D) and (E): the source of the endangerment, the frequency of the endangerment, and the necessity of knowledge of paternity.

First, the source of the physical or emotional endangerment to the child is the primary distinction between subsections (b)(1)(D) and (E). *See In re J.D.B.*, 435

–16–

S.W.3d at 463. Subsection (D) addresses the child's surroundings and environment, while subsection (E) addresses parental misconduct. *Id.*; *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied) (subsection (E) "refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act"). However, parental conduct is also relevant to the child's environment under subsection (D). *In re J.D.B.*, 435 S.W.3d at 463. That is, "[c]onduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D)." *Id.* at 464 (quoting *Castaneda v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 509, 522 (Tex. App.—El Paso 2004, pet. denied)). "Inappropriate, abusive, or unlawful conduct by persons who live in the child's home is part of the 'conditions or surroundings' of the child's home under [subsection (b)(1)(D)]." *Id.*; *see also In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no writ) ("environment" refers not only to the acceptability of the living conditions but also to a parent's conduct in the home).

Second, as to frequency of the endangerment, termination of parental rights under subsection (b)(1)(D) can be based on only a single act or omission. *See In re L.D.C.*, 622 S.W.3d 63, 71 (Tex. App.—El Paso 2020, no pet.); *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *In re T.B.*, No. 07-12-00538-CV, 2013 WL 2467344, at *5 (Tex. App.—Amarillo May 31, 2013, no pet.) (mem. op.). However, under subsection (b)(1)(E), termination "must

–17–

be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required." *In re K.S.*, No. 05-15-01294-CV, 2016 WL 1613126, at *14 (Tex. App.—Dallas Apr. 21, 2016, pet. denied) (mem. op.) (internal quotations and citations omitted).

Third, knowledge of paternity is a prerequisite to a showing of a knowing placement of a child in an endangering environment under subsection (D) but not to a showing of a parental course of conduct endangering a child under subsection (E). *A.S. v. Texas Dep't of Fam. & Protective Servs.*, 394 S.W.3d 703, 713 (Tex. App.—El Paso 2012, no pet.); *see In re D.W.*, No. 10-09-00188-CV, 2009 5155890, at *3 (Tex. App.—Waco 2009, no pet.) (mem. op.); *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex. App.—San Antonio 2000, pet. denied).

Though subsections (b)(1)(D) and (E) have distinctions, they also have similarities. Under both subsections, a trial court may consider endangering conduct that occurred before and after the child's birth. *See In re E.N.C.*, 384 S.W.3d 796, 804–05 (Tex. 2012) (agreeing "an offense occurring before a person's children are born can be a relevant factor in establishing an endangering course of conduct"); *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (noting "endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage" which was at issue in that case).

Also, under both subsections, a trial court may consider conduct that occurred both inside and outside the child's presence. *Dir. of Dall. Cnty. Child Protective*

*Servs. v. Bowling*, 833 S.W.2d 730, 733 (Tex. App.—Dallas 1992, no writ) (concluding that endangerment under predecessor statute to subsection (b)(1)(E) does not require that the child witness the conduct).

As to endangerment generally, it is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.D.B.*, 435 S.W.3d at 463. Specific danger to the child's well-being may be inferred from the parent's misconduct alone. *Boyd*, 727 S.W.2d at 533; *see In re C.V.L.*, 591 S.W.3d at 750. A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re C.V.L.*, 591 S.W.3d at 750.

### 2. Analysis

We construe Father's first and second issues as challenging the legal and factual sufficiency of the evidence to support the implied finding that he committed the acts described in subsections (b)(1)(D) and (E). We consider both together because the evidence on them is interrelated.[16]

Father has been incarcerated since June 2015, roughly six months before Z.E. was born. His anticipated release date is 2028.

Though he denied he knew Mother was pregnant with Z.E. before he was incarcerated—which Mother disputed—Father testified Mother "probably said she

---

[16] *See In re C.V.L.*, 591 S.W.3d at 750 (consolidating examination under sections 161.001(b)(1)(D) and 161.001(b)(1)(E) because evidence on these two grounds is interrelated).

–19–

wanted to have a baby, and I participated in that." Mother brought Z.E. to jail to see Father after he was incarcerated. When asked why he was currently in custody, Father answered, "aggravated battery, discharge of firearm, . . . unlawful usage of firearm by a felon, and criminal damages." The record also includes other evidence regarding Father's criminal convictions and incarceration, which we discuss in more detail in the next section regarding subsection (b)(1)(Q).

When asked why he believed Z.E. is in foster care, he stated, "Well, a little rough. You know, like probably over, you know, disciplining and allowing certain different type of authority figures in his life to discipline him when it wasn't needed." He confirmed that he understood Mother has been criminally charged for injury to a child for excessive discipline inflicted on the children and described Mother as a person "overwhelmed with too many different emotions, and sometimes she lose[s] control." He also described Mother as a person that "picks arguments" and stated the two "normally don't see eye to eye so she normally don't bother with me, and I don't bother her."

After responding to questions from the trial court about his "little rough" comment—which the trial court described as a comment regarding "rough love," with an explanation from and without disagreement from Father—Father stated Mother "need[s] to get herself together mentally" and "work some things out for herself which is anger."

Despite his belief that Mother "probably made one big mistake that ended up into a greater mistake" and his feeling Mother was "taking out her anger – what she's been through on the kids," when asked what Father thought was best for Z.E., he answered, in part, "If it's a possibility that his mother get him, I would – I would highly, you know, agree upon that."

The Department's caseworker testified Father did not contribute in any way to any of the facts that led to Z.E.'s removal in Texas. Z.E.'s therapist provided no opinion regarding Father's relationship with Z.E. Father described the last visit he had with Z.E. as a video visit he had with him when Z.E. was around three years old, when Mother let Father's sister watch Z.E. for a couple of weeks. Father testified that since that video visit, he had no interaction with Z.E. but "probably talked on the phone with him three times after that" but stated Mother changed her phone number so much it was hard to catch up with her. When GAL asked whether it had been "quite, quite some time" since he actually had contact with Z.E., Father agreed.

After reviewing all the evidence in the light most favorable to the implied termination findings, we conclude a reasonable factfinder could have formed a firm belief or conviction as to the truth of the implied findings that Father committed the acts described in subsections (b)(1)(D) and (E). We also conclude, based on the entire record, that the disputed evidence that a reasonable factfinder could not have credited in favor of these termination findings is not so significant that a factfinder could not reasonably have formed a firm belief or conviction as to the truth of these

–21–

findings under subsections (b)(1)(D) and (E). We therefore hold the evidence is legally and factually sufficient to support the implied findings under subsections (b)(1)(D) and (E) as to Father. *See* TEX. FAM. CODE §§ 161.001(b)(1)(D), (E).

We overrule Father's first and second issues.

## B. Father's Acts Under § 161.001(b)(1)(Q)

Next, we consider Father's third issue, which we construe as challenging the legal and factual sufficiency of the evidence to support the trial court's implied finding that Father committed the acts described in section 161.001(b)(1)(Q). We do so even though we are not required to, as only one predicate finding is necessary to support a judgment of termination of parental rights when there is also a finding that termination is in the child's best interest. *See In re A.V.*, 113 S.W.3d at 362.

### 1. Applicable Law

If a best-interest finding under subsection (b)(2) is also made, parental rights may be terminated under section 161.001(b)(1)(Q) if clear and convincing evidence supports a finding that the parent "knowingly engaged in criminal conduct that has resulted in the parent's (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." TEX. FAM. CODE § 161.001(b)(1)(Q).

Subsection (b)(1)(Q) requires finding both that the parent is incarcerated and that he is unable to care for the child for at least two years from the date the petition was filed. *In re H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006) (per curiam); TEX. FAM.

–22–

CODE § 161.001(b)(1)(Q). Absent evidence that a non-incarcerated parent or other person has agreed to provide support for the child on the incarcerated parent's behalf, merely leaving a child with a non-incarcerated parent does not constitute the ability to provide care. *In re H.R.M.*, 209 S.W.3d at 110.

We employ a burden-shifting analysis to assess an incarcerated parent's ability to care for a child. *In re J.G.S.*, 574 S.W.3d 101, 118–19 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). The party seeking termination must first establish that the parent will remain in confinement for the requisite period. *In re B.D.A.*, 546 S.W.3d 346, 358 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). The burden then shifts to the parent to produce "some evidence" as to how he would provide or arrange to provide care for the child during his incarceration. *Id.* at 358. "Cases discussing the incarcerated parent's provision of support through other people contemplate that the support will come from the incarcerated parent's family or someone who has agreed to assume the incarcerated parent's obligation to care for the child." *In re H.R.M.*, 209 S.W.3d at 110. When the incarcerated parent meets that burden of production, the person seeking termination then has the burden of persuasion to show by clear and convincing evidence that the parent's provision or arrangement would not satisfy the parent's duty to the child. *In re Caballero*, 53 S.W.3d 391, 395 (Tex. App.—Amarillo 2001, pet. denied).

## 2. Analysis

Here, Father does not dispute that he engaged in criminal conduct resulting in his incarceration for at least two years from the date of the filing of the petition. Instead, Father argues there is no evidence in the record to establish that he "knowingly" engaged in such criminal conduct.

We disagree. State's exhibit 2, which was admitted into evidence, consists of certified copies of various court records relating to Father's present incarceration. That exhibit reflects that on July 10, 2015, Father was charged with eight different felony counts in Illinois, one of which alleged the following:

**CRIMINAL INDICTMENT**

COUNT 1 of 8 : The GRAND JURY of St. Clair County, Illinois in the name and by the authority of the People of the State of Illinois, charges that GREGORY L. COOK and FRANKLIN C. EDWARDS on or about the 13th day of June, 2015, in the County of St. Clair, in the State of Illinois, committed the offense of AGG BATTERY/DISCHARGE FIREARM, in violation of Section 12-3.05(e)(1), Act 5.0, Chapter 720, Illinois Compiled Statutes 2006, in that GREGORY L. COOK Co-Defendant(s): FRANKLIN C. EDWARDS, in committing a battery, in violation of Section 12-3 of Act 5 of Chapter 720 of the Illinois Compiled Statutes, knowingly and by means of discharging a firearm caused an injury to LATRESHA BROOKS in that said defendant shot LATRESHA BROOKS in the foot with a semiautomatic rifle. A Class X Criminal Felony

Indictment filed this 10th day of July, 2015. Warrant Issued to Detective COLLINS, DANIEL, Originating Agency of BELLEVILLE.

As it reflects, the indictment states, in part, that Father, "on or about the 13th day of June, 2015 . . . committed the offense of "AGG BATTERY/DISCHARGE FIREARM," in violation of an Illinois law cited in the indictment, "in that [Father] . . . in committing a battery . . . *knowingly* and by means of discharging a firearm caused an injury to [a particular individual] in that said defendant shot [the individual] in the foot with a semiautomatic rifle."

State's exhibit 2 also reflects that on June 29, 2016, Father pleaded guilty to that felony charge and another felony charge, and on August 10, 2016, the court entered a judgment convicting him of both charges and sentencing him to a fifteen-year sentence on the first charge and a three-year sentence on the other charge, allowing him credit for time served beginning June 10, 2015, and ordering, on the first charge, that he serve eighty-five percent of the sentence. Father testified his anticipated release date is in 2028, which is roughly seven years after the Department filed its petition.

The Department and GAL, the parties seeking termination, thus met their burden of first establishing that Father will remain in confinement for the requisite period. *See In re B.D.A.*, 546 S.W.3d at 358.

The burden thus shifted to Father to produce "some evidence" as to how he would provide or arrange to provide care for the child during his incarceration. *Id.* at 358. To the extent he argues he met that burden of production and that GAL and Department failed to meet its resulting burden of persuasion, we disagree because we find no evidence in the record as to how Father would provide or arrange to provide care for Z.E. during his incarceration. *See In re B.D.A.*, 546 S.W.3d at 358; *see also In re J.G.S.*, 574 S.W.3d 101, 119 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("An incarcerated parent cannot meet his burden merely by producing evidence that there is an unincarcerated [caregiver] who is willing and able to care for the child; instead, the parent must present evidence that the alternative caregiver

–25–

is providing care *on behalf of the parent*.") (emphasis added). We find no such evidence in the record before us.

We conclude the evidence is legally and factually sufficient to support the trial court's implied finding that Father knowingly committed criminal conduct that resulted in "imprisonment and inability to care for the children for not less than two years from the date the petition was filed." TEX. FAM. CODE § 161.001(b)(1)(Q); *see In re H.R.M.*, 209 S.W.3d at 110. We overrule Father's third issue.

### C.     Best Interest Under 161.001(b)(2)

We construe Father's fourth issue as challenging the legal and factual sufficiency of the evidence to support the trial court's implied finding under subsection (b)(2) that termination of Father's rights was in Z.E.'s  best interest.

#### 1.     Applicable Law

"Best interest" is a term of art encompassing a broad "facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 & n.22 (Tex. 2013). The best-interest prong "is child-centered and focuses on the child's well-being, safety, and development," *In re A.C.*, 560 S.W.3d at 631, and it allows a court to consider the following non-exclusive factors:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future;

(3) the emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individuals seeking custody;

–26–

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see In re A.C.*, 560 S.W.3d at 631 & n.29 (citing *Holley*, while listing many of these same factors and noting that family code section 263.307 also provides additional best-interest factors).[17]

These *Holley* factors are not exhaustive, and a best-interest finding need not be supported by evidence of every *Holley* factor. *In re C.H.*, 89 S.W.3d at 27. The same evidence can be relevant to both section 161.001(b)(1) termination grounds and the child's best interest. *Id.* Moreover, while there is a strong presumption that

---

[17] Section 263.307(b) lists several best-interest factors that the trial court and the Department can consider in determining whether a child's parents are willing and able to provide the child with a safe environment, including (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, or other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b). Father lists the *Holley* factors and does not discuss these other factors in his brief.

maintaining the parent–child relationship serves the child's best interest, there is also a presumption that promptly and permanently placing the child in a safe environment is in the child's best interest. TEX. FAM. CODE §§ 153.131(b); 263.307(a); *In re D.W.*, 445 S.W.3d 913, 925 (Tex. App.—Dallas 2014, pet. denied).

In *C.H.*, the supreme court stated, "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.*, 89 S.W.3d at 27. Although "paltry evidence relevant to each [*Holley* factor] would not suffice to uphold [a factfinder's] finding that termination is required," *id.*, as we discuss below, we conclude the evidence in this case is sufficient.

### 2. Analysis

Much of the evidence discussed above is also pertinent here, particularly with regard to the second, third, sixth, eighth, and ninth factors. Also, as to the first factor, although no evidence was presented regarding Z.E.'s desires regarding placement in connection with Father, in his forensic interview, when asked about his Father, Z.E. expressed no desire to be placed with Father and, in fact, described his Father as being "dead."

Based on the record evidence, when viewed in the light most favorable to the ruling and as a whole, we conclude that a reasonable trier of fact could have formed

a firm belief or conviction that termination of Father's parental rights is in Z.E.'s best interest and therefore hold the evidence is both legally and factually sufficient to support the trial court's implied best-interest finding as to Father under subsection (b)(2). *See Holley*, 544 S.W.2d at 371–72; TEX. FAM. CODE §§ 161.001(b)(2).

We overrule Father's fourth issue.

### D.    Pronouncement & Decree

Unlike his first four issues—in which Father asks us to reverse the decree—in his fifth issue, Father asks us, alternatively, to modify the decree to reflect the trial court's oral pronouncement that the Department continue with an ICPC placement investigation on Father's cousin.[18]

After its pronouncement, but before the decree was signed, the trial court signed a separate order requiring the Department to institute an ICPC priority home study request on Father's cousin regarding Z.E. The decree does not refer to, modify, or mention that order, and after the order, the record does not show any request, objection, or other motion by Father regarding the ICPC placement investigation. Father's counsel signed the decree, agreeing as to its form, and Father did not object to or seek to modify the decree in the trial court.

---

[18] When the trial court pronounced its ruling, the trial court ordered the Department "to look at the paternal cousin for a possible placement in Illinois since she has been approved in Illinois before, and she is a family placement" and to do so "within the next 90 days." In the decree, the trial court referred the case to the local child protection and permanency court (CPPC) for further hearings and stated the CPPC shall conduct a permanency hearing after final order no later than ninety days after the trial court rendered the decree.

GAL argues that, by failing to object to the decree in the trial court, Father failed to preserve for appellate review any error related to its contents. We agree.

Generally, to preserve an issue for appellate review, the record must show a complaint was made to the trial court "by a timely request, objection, or motion" that, among other things, "states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion." TEX. R. APP. P. 33.1(a). The record fails to show Father made any such request, objection, or motion in the trial court regarding the lack of a reference in the decree to the ICPC placement investigation of his cousin.

We conclude Father failed to preserve his fifth issue for appellate review, and it is waived. *See id.* We overrule Father's fifth issue.

## V. CONCLUSION

We affirm the trial court's decree and deny Mother's counsel's motion to withdraw.

/Ken Molberg/
221337f.p05                              KEN MOLBERG
                                         JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF Z.E.,
A CHILD

No. 05-22-01337-CV

On Appeal from the 304th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. JC-22-00703-
W.
Opinion delivered by Justice
Molberg. Justices Reichek and
Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial

court is **AFFIRMED**.

Judgment entered this 23rd day of May, 2023.